**Ricky WYATT, by and through his aunt and legal guardian, Mrs. W.C. RAWLINS, Jr., et al., Plaintiffs,**

**Diane Martin, et al., Plaintiff–Intervenors,**

**v.**

**Richard E. HANAN, as Commissioner of Mental Health and Mental Retardation, and the State of Alabama Mental Health Officer, et al., Defendants,**

**United States of America, Amicus Curiae.**

**Civ. A. No. 3195–N.**

United States District Court, M.D. Alabama, Northern Division.

Oct. 27, 1994.

Fern Singer, Watterson & Singer, Birmingham, AL, James A. Tucker, ACLU of Alabama, Montgomery, AL, Ira A. Burnim, Andrew Bridge, Shelley Jackson, Claudia

Schlosberg, Ellen Harris, Mary Giliberti, Leonard S. Rubenstein, Bazelon Center for Mental Health Law, James M. Lichtman, Ropes & Gray, Washington, DC, Kathryn H. Sumrall, Jackson, Garrison & Sumrall, P.C., Birmingham, AL, for Ricky Wyatt, Glenda Brandner, David S. Schoel, Dr. D. A.R. Peyman, Joseph L. Moudry, Brenda N. Stacey, William Holden, Jr., Amelia B. Heath.

David Ferleger, Philadelphia, PA, Drew P. Baker, Reuben Wright Cook, Victoria Ann Farr, Alabama Disabilities Advocacy Program, Tuscaloosa, AL, for Diane Martin, Mary Beth Parker, William Smith, Adelia Keebler, Michael Guins, Richard Mills, Kim Smelley, Frankie Hopkins, Kenneth Cook, Wayne Williams.

Mary Elizabeth Culberson, Office of the Atty. Gen., Gregory Dale Crosslin, Robert E. Sasser, James Darrington Hamlett, Clifton E. Slaten, Charles Brinsfield Campbell, Patrick C. Davidson, Sasser & Littleton, P.C., June O. Lynn, G.R. (Rick) Trawick, Milton J. Westry, Dept. of Mental Health & Mental Retardation, Montgomery, AL, Ricky J. McKinney, Watson, Harrison & deGraffenried, Tuscaloosa, AL, for Richard E. Hanan, Henry Steagall, Tom Brassell, Annie Laurie Gunter, Ken Wallis.

Kenneth E. Vines, U.S. Attorney's Office, Montgomery, AL, Deval L. Patrick, Robinsue Frohboese, Judith C. Preston, Tawana E. Davis, U.S. Dept. of Justice, Civ. Rights Div., Sp. Litigation Section, Washington, DC, amicus U.S.

## ORDER

MYRON H. THOMPSON, Chief Judge.

The plaintiffs and the defendants in this action entered into a consent decree in 1986 governing the operation of the Alabama Department of Mental Health and Mental Retardation System.[1] In the 1986 decree, defendant state officials agreed to renew their efforts to comply with certain minimal constitutional standards for mental health and mental retardation facilities set forth by the court in companion opinions in 1972: *Wyatt v. Stickney,* 344 F.Supp. 373 (M.D.Ala.1972) (standards for mentally ill), *aff'd in relevant part,* 503 F.2d 1305 (5th Cir.1974); *Wyatt v. Stickney,* 344 F.Supp. 387 (M.D.Ala.1972) (standards for mentally retarded), *aff'd in relevant part,* 503 F.2d 1305 (5th Cir.1974). In 1991, a new round of litigation began. On January 18, 1991, the defendants brought a motion for a finding that they have met their obligations under the 1986 decree and for an order terminating this lawsuit, and, on January 22, 1993, the plaintiffs brought a motion to enforce the 1986 consent decree. Both motions are set for trial in January 1995.

On September 27, 1994, the court entered an order[2] granting the motion of the United States of America to be reinstated in this lawsuit as amicus curiae.[3] The United States sought to be reinstated based on "information and belief" that defendant state officials "are violating the *Wyatt* standards, which are now more than twenty years old, as well as the 1986 decree"; that they "have failed and are continuing to fail to provide community services to hundreds of class members who are presently confined in institutions and for whom community placement has been recommended or is otherwise appropriate"; and that they "have failed and are continuing to fail to make substantial progress in placing members of the plaintiff class in community facilities and programs as required by the 1986 decree."[4] The federal government suggests that it can be of particular help to the court, first, by "presenting the testimony of leading mental health and mental retardation

---

1. The consent decree is reproduced in *Wyatt v. Wallis,* No. 3195-N, 1986 WL 69194 (M.D.Ala. Sep. 22, 1986).

2. Doc. no. 149. The notation "Doc. no." indicates the file docket number given to a document. It is penciled in the right-hand bottom corner of a pleading and is entered on the docket sheet. Because of the large number of documents (pleadings and orders) being generated almost daily in this case, the court will attempt to identify a document by both its filing or entry date and its docket number. The clerk of the court did not begin giving documents a docket number until November 22, 1993, however.

3. United States's motion to be reinstated as amicus curiae, filed on September 16, 1994 (Doc. no. 119).

4. United States's brief filed on September 16, 1994 (Doc. no. 120), at 3.

authorities in the United States" regarding these issues and, second, by assisting in "interpret[ing] the requirements of Title II of the Americans with Disabilities Act[, 42 U.S.C.A. §§ 12131–12165] (which requires a public entity to administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities) and the Department of Justice regulations implementing the Act."[5]

This cause is now before the court on the defendants' motion, filed September 29, 1994, for clarification of the September 27 order reinstating the federal government as amicus curiae.[6] The defendants seek clarification as to whether the federal government is to take part as a "traditional" amicus curiae or a "litigating" amicus curiae. As will be discussed below, the court concludes that the federal government is reinstated to its historical role in this action, within the parameters set forth in this order.

## I.

The court begins its analysis of this issue by noting that the federal government participated as an amicus in this case for over 20 years, until 1992 when it moved to withdraw because of its diminishing role in the litigation.[7] The court granted the motion to withdraw, stating that it "would welcome a request by the United States in the future to renew its participation in this litigation."[8] Prior to 1992, the federal government participated in many ways, including the following: submitting legal memoranda; conducting discovery, including participating in depositions and inspecting facilities; and participating in evidentiary hearings, including calling witnesses and cross-examining witnesses.[9]

The defendants, in drawing a distinction between what they call a "traditional" amicus and a "litigating" amicus, depend heavily on *United States v. State of Michigan*, 940 F.2d 143, 161–67 (6th Cir.1991). In that case, the Sixth Circuit Court of Appeals noted that, historically, an amicus participated as an "impartial friend of the court" and not as an "adversary party in interest in the litigation." *Id.* at 165 (emphasis deleted). Of course, as an impartial friend of the court, a party may still be adversarial; indeed, it must if it is to make its point. The critical point is that an impartial friend of the court steps out of the role of amicus when it essentially assumes the role of being not just adversarial but a "party in interest to the litigation." There has, therefore, "been a bright-line distinction between amicus curiae and named parties/real parties in interest." *Id.* at 165. Amici have not traditionally "been permitted to rise to the level of a named party/real party in interest." *Id.*

In *Michigan*, a group that had been denied intervention as a real party in interest was allowed to participate as amicus curiae. The amicus, however, "virtually assumed effective control of the proceedings in derogation of the original parties." 940 F.2d at 164. The Sixth Circuit found that this arrangement circumvented the Federal Rules of Civil Procedure—in particular, Rules 14 and 17 through 25. The amicus became "an intruder with equal litigating rights of a named party/real party in interest," taking control of the litigation from the plaintiff and defendant. *Id.* at 166. To allow an amicus curiae to enjoy this range of participation "would extend carte blanche discretion to a trial judge to convert the trial court into a free-wheeling forum of competing special interest groups capable of frustrating and undermining the ability of the named parties/real parties in interest to expeditiously resolve their own dispute." *Id.* Therefore, the bright line between an amicus and a named party centers around control of the litigation. The named parties should always remain in control, with the amicus merely responding to the issues presented by the parties. An amicus cannot initiate, create, extend, or en-

---

**5.** *Id.* at 3–4.

**6.** Doc. no. 166.

**7.** United States's motion to withdraw and supporting brief, both filed on August 27, 1992.

**8.** Order of September 16, 1992.

**9.** United States's brief, filed on October 7, 1994 (Doc. no. 192), at 2 & n. 2. The government's characterization of its participation has not been challenged.

large issues. Further, an amicus has no right to appeal or dismiss issues. *Id.* at 165–66.

## II.

The defendants would also have the court draw a bright line between the role of what they call a "traditional" amicus curiae and a "litigating" amicus curiae. This effort, which would essentially turn on nomenclature, would be meaningless. If an amicus—whether it goes by the title "litigating" amicus or under some other name—is essentially performing the role of a named party then, for the reasons given by the Sixth Circuit in *Michigan*, the amicus is not really an amicus.[10] The more important question is how clearly the role of an amicus can, or should, be defined. The court believes that the concept of amicus curiae is flexible and that, as long as the amicus does not intrude on the rights of the parties, it can have a range of roles: from a passive one of providing information to a more active participatory one. In other words, although amici should not assume control of the litigation, they can take an active role in some cases beyond providing information. *E.g., Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir.1982).

▬▬ Whether the role of an amicus should be active or passive or should fall somewhere in between depends on a number of factors. The court has identified at least eight—in particular, where, as here, the amicus already has a history of participating in the litigation. *First, the nature of the litigation and the issues presented:* The role of an amicus will vary depending on whether the issues are of widespread public or narrow private concern and also on the procedural posture and complexity of a case. This lawsuit presents extremely complex issues of great public interest—the rights of the mentally ill and mentally retarded. Indeed, strong, wide, and independent public interest is an essential ingredient in this litigation because the persons whose rights are at issue are unlikely to be able to "voice" their concerns. *Wyatt v. Horsley,* 793 F.Supp. 1053, 1056 (M.D.Ala.1991). As this court has previously explained, because "plaintiffs' counsel cannot receive input from class members, he must seek it from such secondary sources as public interest organizations." *Id.*

*Second, the nature of the amicus:* Because the federal government is tied to neither the plaintiffs nor the defendants and because the federal government has participated in a number of similar cases across the country, it has and can continue to bring to this litigation a helpful neutral and national perspective. In addition, because one of the laws relied upon—Title II of the Americans with Disabilities Act—is relatively new and developing, the Justice Department, which is responsible for promulgating regulations and enforcing the Act, is uniquely qualified to assist the court in its interpretation of the law and, in particular, of the regulations promulgated under it.[11] *Cf. Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984) (discussing deference to agency interpretation). Finally, the court is impressed that the federal government has demonstrated a strong and longstanding interest in mental health issues and in protecting the rights of persons, such as the mentally disabled, who cannot protect themselves, and that this interest has manifested itself most dramatically and beneficially in this litigation itself.

*Third, whether the court has invited the participation of the amicus:* The court initially invited the federal government to participate in this litigation over 20 years ago.[12] In addition, in allowing the government to withdraw in 1992, the court emphasized that it "would welcome a request by the United

---

**10.** It is therefore of no consequence that in its motion to be reinstated, the federal government referred to itself as a litigating amicus. Doc. no. 119. The critical question, instead, is what role it desired to assume in this litigation.

**11.** In the motion for clarification, the defendants contend that the Americans with Disabilities Act is not a part of this litigation. In this order, the court does not resolve whether that issue should remain in the litigation, but to the extent that it is a pending issue, the federal government will be helpful in resolving it.

**12.** Order of March 12, 1971, at 7.

States in the future to renew its participation in this litigation." [13]

*Fourth, whether the parties object to the amicus:* The defendants object to the government's participation, and the plaintiffs do not. It is noteworthy, however, that, as far as the court is aware, the defendants did not object to the participation of the federal government for over 20 years, prior to 1992.

*Fifth, the history of the participation of the amicus in the litigation and whether that participation has been helpful to the court:* The federal government has a long history of participation in this litigation. As stated, during the course of its participation in this lawsuit, the federal government has participated in many ways, including the following: submitting legal memoranda; conducting discovery, including participating in depositions and inspecting facilities; and participating in evidentiary hearings, including calling witnesses and cross-examining witnesses. The federal government has been of great assistance to the court in resolving difficult issues.

*Sixth, how the amicus has handled its responsibility in the past:* The court is not aware of any abuse by the federal government of the role of amicus in this litigation; certainly, there have been no problems even remotely similar to those found in *Michigan.* The government has not aligned itself fully with either party in this litigation but has instead remained detached and presented an impartial viewpoint. Its participation has been that of an "impartial friend of the court" and not that of an "adversary party in interest in the litigation." *Michigan,* 940 F.2d at 165 (emphasis deleted). Admittedly, in faithfully performing its role as an "impartial friend" of the court, the government has, as it must, been "adversarial"; it has not, however, assumed the quite different role of a "party in interest in the litigation."

*Seventh, whether participation by the amicus will be currently helpful to the court and will not prejudice the parties:* Now before the court are two important matters: the defendants' motion for a finding that they have met their obligations under the 1986 decree and for an order terminating this lawsuit; and the plaintiffs' motion to enforce the 1986 consent decree. The court agrees with the federal government that it can be of particular help, first, by participating in the litigation of these matters, including presenting its own evidence, and, second, by assisting in interpreting the requirements of Title II of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12131–12165. And to the extent this help leads to a just and expeditious resolution—which the court believes it will—the defendants will benefit themselves.

*Eighth, whether the amicus is manipulating that role as a substitute for intervention:* The court finds no evidence of such abuse of the Federal Rules of Civil Procedure in this case.

Based on the above factors, the court reinstates the federal government to its historical role in this case. It may address any issue raised by one of the parties. In doing so, the government can conduct discovery and participate fully in trial, including examining witnesses and presenting its own witnesses. Unlike in the *Michigan* case, this court is not presented with a situation where the amicus curiae is attempting to gain control of the litigation or to prevent its speedy disposition. Rather, the resumption of the federal government's participation in this litigation will be greatly beneficial to all parties and the court. The court, however, will be vigilant in ensuring that the government's participation is limited to addressing the issues before the court and does not rise to the level of taking control of the lawsuit.

Accordingly, it is ORDERED that the defendants' motion for clarification, filed on September 29, 1994, is granted, and it is DECLARED that the role of the United States of America will conform to its historical role in this lawsuit.

---

**13.** Order of September 16, 1992.