Carolyn **JORDAN**, etc., et al., **Plaintiffs,**

**Sandra M. Pierce and Joyce S. Oyler,**
**Plaintiff-Intervenors,**

v.

**Charles SWINDALL, etc., et**
**al., Defendants.**

**Civ. A. No. 75–19–N.**

United States District Court,
M.D. Alabama, N.D.

Jan. 3, 1985.

Morris S. Dees, Jr., Ira Burnim, Montgomery, Ala., for Carolyn M. Jordan.

M. Wayne Sabel, Montgomery, Ala., for Pierce and Oyler.

Robert C. Black, Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for all defendants except Wade L. Moss and Montgomery City-County Personnel Bd.

Robert D. Segall, Copeland, Franco, Screws & Gill, Montgomery, Ala., for Wade L. Moss and Montgomery City-County Personnel Bd.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This is a sex-discrimination lawsuit against the police chief and mayor of the City of Montgomery, Alabama, brought

originally in 1975, in which police officers Sandra M. Pierce and Joyce S. Oyler recently have separately intervened. The complaints-in-intervention rely on 42 U.S.C.A. § 1983 and 42 U.S.C.A. §§ 2000e through 2000e–17 (otherwise known as Title VII of the Civil Rights Act of 1964, as amended). Plaintiff-intervenors Pierce and Oyler allege disparate treatment and disparate impact on the basis of gender in various police department practices, including promotion, transfer, assignment and training.

This cause is now before the court on Pierce and Oyler's October 9, 1984, motion for certification of class action and the police chief and mayor's October 9, 1984, response to plaintiff-intervenors' request to represent class. Pierce and Oyler seek to represent a class consisting of "all women who have been employed, are employed, or might be employed with the City of Montgomery Police Department." In support of their motion they have submitted briefs, affidavits and excerpts from depositions. Also included as evidence before the court are similar materials that the police chief and mayor have submitted. Based on this evidence and for reasons given below, the court is of the opinion that Pierce and Oyler's motion is due to be granted to the extent that a class shall be certified consisting of past, present and future female police officers,[1] with regard to all police department employment practices except hiring.[2]

## I.

The record now before the court reveals the following about Pierce and Oyler and the Montgomery police department. Oyler has been employed by the department since 1963, first as a meter maid, then as a police officer. In 1976, she was promoted to corporal and in 1977 to sergeant. Since 1978, she has been eligible and has applied for promotion to lieutenant.

Pierce has been employed by the department since 1976 and became a corporal in 1980. Since 1981, she has been eligible and has applied for promotion to sergeant.

Promotion of police officers from the rank of corporal[3] in the Montgomery police department occurs according to a two-step process. A panel of majors provides evaluations that form the basis of an "eligibility roster" whereby all those eligible for and seeking promotion are ranked. This roster then becomes available in whole or in part to the mayor who selects from it those police officers to be promoted. The Montgomery City-Council Personnel Board, whose members have been voluntarily dismissed as defendants in this action, also plays a role in the promotion process, but one that Pierce and Oyler do not challenge.

## II.

■ To represent a class of allegedly similarly situated individuals, plaintiffs must show numerosity of the class, typicality of their claims, commonality of questions of law and fact, and adequacy of representation. Fed.R.Civ.P. 23(a). They must also show that the final relief they request is appropriate to the class as a whole. Rule 23(b)(2). Whether these requirements have been met is a procedural question distinct from the merits of the action; "the question is not whether the plaintiff or plaintiffs ... will prevail on the merits, but rather whether the require-

1. While "police officer" technically appears to refer only to the lowest rank of law enforcement personnel at the department, the court uses the term here and throughout this opinion to refer to all such personnel of ranks up to and including chief. The term does not, however, include all police department employees, but only those in law enforcement.

2. The record in this cause reveals that the court previously certified a plaintiff class by an oral order of January 12, 1976. Pierce and Oyler suggest that a class now need not be certified because of this previous order, but that they simply should be evaluated as class representatives. The court sees little to be saved by such a procedure and, because of the sparse record of the previous certification, considers class certification anew.

3. A police officer attains the rank of corporal in the police department according to an internal administrative process that Pierce and Oyler do not challenge here.

ments of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) *quoting Miller v. Mackay International*, 452 F.2d 424, 427 (5th Cir.1971); *see also Love v. Turlington*, 733 F.2d 1562, 1665 (11th Cir.1984).

■ *Numerosity.* Rule 23(a)(1) requires the class to be "so numerous that joinder is impracticable." Pierce and Oyler seek to represent all past, present and future female police officers of the police department.[4] The most recent evidence before the court indicates that there are presently thirty-seven women employed as police officers by the police department. This number appears to have been relatively constant over the past few years. With additions for past and future female police officers, whose number can only be guessed, this number certainly represents a group of plaintiffs whose joinder would be impracticable.

*Commonality and Typicality.* Rule 23(a)(2) and (3) require that "there are questions of law or fact common to the class" and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." According to the Supreme Court,

> [t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982). Pierce and Oyler meet the commonality and typicality requirements in this case.

"The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." *Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 620 n. 9, *modified*, 714 F.2d 1066, 1067 (11th Cir.1983). The record reveals that Pierce and Oyler have filed complaints with the Equal Employment Opportunity Commission and received responses, as required.

Pierce filed a first EEOC complaint dated December 29, 1982, and a second dated February 28, 1983. She received a right-to-sue letter dated July 27, 1983. Pierce's complaints were both phrased as class complaints. They focused primarily on the department's promotion process. However, the second complaint also alleged that "[t]he defendants' disparate treatment of female officers continues in areas of low level departmental promotions, job assignments, efficiency ratings, continuing education opportunities in law enforcement and other areas which Plaintiff does not have the means to know about."

Oyler filed an EEOC complaint dated August 21, 1984, with an amendment dated October 25, 1984. She received a right-to-sue letter dated December 10, 1984. Her complaint also primarily challenges the promotion process, but again says "I have experienced demotions, job assignment transfers, shift changes and harassment as a result of disparate treatment." It refers to problems of this kind affecting other female police officers and is clearly a class-based complaint.

Therefore, the scope of Pierce's and Oyler's EEOC complaints includes a wide range of departmental employment practices. However, their's is not an across-the-board attack. *See General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982). Most notably, Pierce and Oyler do not challenge the department's hiring

---

**4.** Excluding the issue of hiring from the scope of the class claims, as the court does by this order, does not diminish the numerosity of the plaintiff class. Once hired, future female employees will be affected by all other employment practices similarly to past and present female employees.

practices.[5] Both are currently employed, and they have not alleged that hiring is "like or related" to the practices that they do contest. Therefore, the court will exclude the issue of hiring from consideration according to its class certification in this cause.

With regard to promotions, Pierce and Oyler attack the department's practices as subjective and discriminatory. Specifically, they attack the majors' evaluations which form the basis of the "eligibility roster" rankings, and the mayor's final selection for promotion from the rosters. They allege that the majors and the mayor employ subjective decisionmaking processes that have an adverse impact on women. Such alleged processes may serve as the basis of a class action. *See General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 159 n. 15, 102 S.Ct. 2364, 2371 n. 15, 72 L.Ed.2d 740 (1982); *Nelson v. United States Steel Corp.,* 709 F.2d 675, 679 n. 9 (11th Cir.1983).

Pierce and Oyler's allegations regarding other police department employment practices are similarly common and typical. For example, they allege that no woman has been provided the opportunity for specialized training and that no woman has been assigned to certain specialized duties. In addition, evidence submitted by Pierce and Oyler includes references to particular incidents of sexual harassment and discrimination involving female police officers other than themselves.

The police chief and mayor dispute the commonality and typicality of Pierce and Oyler's claims on several grounds. First, they contend that the class should be limited to female police officers seeking the positions Pierce and Oyler themselves seek, namely sergeant and lieutenant. However, the evidence now before the court shows that the promotion process is the same for all police officers of whatever rank above corporal. While a trial of the merits may

reveal differences, these may be accounted for by recertification. *See, e.g., Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1147–48 (11th Cir.1983).

Second, the police chief and mayor argue that many other female police officers dispute Pierce and Oyler's view that sex discrimination exists at the police department. Evidence that some female police officers do not believe they are victims of sex discrimination is beside the point of class certification. Such evidence is relevant only to the merits of Pierce and Oyler's claims which are not now before the court. *See Love v. Turlington,* 733 F.2d 1562, 1565 (11th Cir.1984).

*Adequacy of Representation.* Rule 23(a)(4) requires the court to determine whether "the representative parties will fairly and adequately protect the interests of the class." In determining this issue, the court must inquire into "first, the adequacy of the representative, and second the adequacy of his counsel." 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23.-07[1] at 23–202.

> As to adequacy of the representative, the traditional approach has been to consider (1) whether the interest of the named party is coextensive with the interests of the other members of the class; (2) whether his interests are antagonistic in any way to the interests of those whom he represents; (3) the proportion of those made parties as compared with the total membership of the class; (4) any other facts bearing on the ability of the named party to speak for the rest of the class.

*Id.* at 23–203 (footnotes omitted). "The determination that a party would adequately protect the interest of a class is factual and depends on the circumstances of each case." *Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 618 (11th Cir.1983). Here, the court finds, based on the full record before it, that Pierce and Oyler will

---

5. Even so, hiring was the subject of the original complaint in this matter, initiated in 1975, and the department remains under an injunction banning sex discrimination in hiring as a result.

At this time, however, the court will not reconsider hiring practices, absent evidence of violations of the injunction in that regard.

fairly and adequately protect the interests of the class to be certified.

Both Pierce and Oyler have been employees of the police department for a significant period of time, such as would make them familiar with its operations.[6] As alleged, they have been eligible for and have ardently sought promotion for some time as well. The evidence reflects no differences by rank in the claims Pierce and Oyler raise, so either is an adequate representative, and both are more than adequate. And the two certainly constitute a sufficient proportion of the thirty-seven female police officers to be able to protect their interests.

In no apparent way can Pierce and Oyler be said to present claims antagonistic to the other female police officers. The gravamen of their claims is sex discrimination. Again, there is no antagonism of interest between an assertion that sex discrimination exists and the purported denials by other female officers. Any antagonism of fact will be resolved at trial.

The court also finds, based on the evidence before it, that Pierce and Oyler's counsel are fully adequate.

*Relief Appropriate to the Class as a Whole.* Rule 23(b)(2) requires the court to be satisfied that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Here, Pierce and Oyler seek declaratory and injunctive relief, barring the defendants from perpetuating allegedly discriminatory practices, and restoring class members to positions they would have held if not for the alleged discrimination. In light of Pierce and Oyler's claims, such class-

wide relief would seem appropriate. *See, e.g., Lewis v. Smith,* 731 F.2d 1535, 1540 (11th Cir.1984).

For these reasons, the court concludes that a class is due to be certified with Pierce and Oyler as its representatives. An appropriate order will be entered.

---

6. In a status conference, counsel have informed the court of recent allegations of misconduct against Oyler. Since there is at present no evidence before this court supporting these allega-tions and no basis for their relevance, the court does not take the allegations into consideration at this time.