Ricky **WYATT,** By and Through His Aunt and Legal Guardian, Mrs. W.C. **RAWLINS,** Jr., et al., Plaintiffs,

Diane Martin, et al., Plaintiff–Intervenors,

v.

R. Emmett **POUNDSTONE,** as Commissioner of Mental Health and Mental Retardation, and the State of Alabama Mental Health Officer, et al., Defendants,

United States of America, Amicus Curiae.

Civil Action No. 3195–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 3, 1995.

Fern Singer, Watterson & Singer, Birmingham, AL, James A. Tucker, ACLU of Alabama, Montgomery, AL, Ira A. Burnim, Andrew Bridge, Shelley Jackson, Claudia Schlosberg, Bazelon Center for Mental Health Law, Washington, DC, James M. Lichtman, Ropes & Gray, Washington, DC, Kathryn H. Sumrall, Jackson, Garrison & Sumrall, P.C., Birmingham, AL, for plaintiffs Ricky Wyatt, Glenda Brandner, By and Through Her Husband and Legal Guardian

Wolfgang Brandner, David S. Schoel, By and Through His Father and Legal Guardian, J. Fred Schoel, Jr., Dr. Peyman, Joseph L. Moudry, Brenda N. Stacey, William Holden, Jr., Amelia B. Heath, for Themselves and All Others Similarly Situated.

David Ferleger, Philadelphia, PA, Drew P. Baker, Reuben Wright Cook, Victoria Ann Farr, Alabama Disabilities Advocacy Program, Tuscaloosa, AL, for intervenors-plaintiffs Diane Martin, Mary Beth Parker, William Smith, Adelia Keebler, Michael Guins, Richard Mills, Kim Smelley, Frankie Hopkins, Kenneth Cook, Wayne Williams.

Mary Elizabeth Culberson, Office of the Attorney General, Montgomery, AL, Gregory Dale Crosslin, Robert E. Sasser, Clifton E. Slaten, Sasser & Littleton, P.C., Montgomery, AL, G.R. (Rick) Trawick, Department of Mental Health & Mental Retardation, Montgomery, AL, Paul Smith, Genner & Block, Washington, DC, for defendants Richard E. Hanan, Commissioner of Mental Health, Henry Steagall, Individually and in His Capacity as Director of Finance for the State of Alabama, Tom Brassell, Individually and in His Capacity as Comptroller of the State of Alabama, Annie Laurie Gunter, Individually and in Her Capacity as Treasurer of the State of Alabama, Ken Wallis, as Receiver of the Mental Illness and Mental Retardation Operation.

Kenneth E. Vines, U.S. Attorney's Office, Montgomery, AL, Deval L. Patrick, Robinsue Frohboese, Judith C. Preston, Tawana E. Davis, United States Department of Justice, Civil Rights Division Special Litigation Section, Washington, DC, for amicus curiae U.S.

## ORDER

MYRON H. THOMPSON, Chief Judge.

In this ongoing lawsuit, the plaintiffs, who are residents of facilities in the Alabama Mental Health and Mental Retardation System, claim that defendant state officials are violating their rights under a 1986 consent decree, the United States Constitution, and the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101–12213 (West Supp.1995).[1] Now before the court are two motions filed by the defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) a motion to recertify or modify the plaintiff class [2] and (2) a supplemental motion to recertify or modify the plaintiff class and alternative motion to decertify the plaintiff class.[3] The court also has before it (3) a motion filed by Robert Hanna, Gregory Wolke, Jean Washington, Brent Bugsch, Benjamin Stokes, Stephanie Ramsey, and Eric Boothe seeking to intervene as plaintiffs pursuant to Rule 24 of the Federal Rules of Civil Procedure.[4] By order entered on March 14, 1995, the court conditionally granted the last motion and allowed the "Hanna plaintiffs" to intervene subject to reconsideration and briefing by the parties.[5]

For the reasons that follow, the defendants' two motions will be granted to the extent they seek recertification of the class, and the court will reaffirm its earlier order granting the Hanna plaintiffs' motion to intervene.

## I. BACKGROUND

This lawsuit began in 1970. Although no party has been able to locate in the record a formal order certifying the class, the court and all of the parties have treated this lawsuit as a class action for almost 25 years. *See, e.g., Wyatt v. Stickney,* 344 F.Supp. 373 (M.D.Ala.1972) (ordering relief as to class of mentally-ill plaintiffs), *aff'd in relevant part,* 503 F.2d 1305 (5th Cir.1974); *Wyatt v. Stickney,* 344 F.Supp. 387 (M.D.Ala.1972) (ordering relief as to class of mentally-retarded

---

1. For purposes of this opinion, the court considers mentally-ill to refer both to individuals with mental-illness and those with an emotional disturbance. However, the court does not reach whether mental illness and emotional disturbance are the same phenomenon medically. *See Wyatt v. Hardin,* No. 3195–N, 1975 WL 33692 (M.D.Ala. Feb. 28, 1975) (defining mentally-ill portion of class as consisting of individuals with mental illness or an emotional disturbance).

2. Filed December 22, 1994 (Doc. no. 417).

3. Filed January 18, 1995 (Doc. no. 456).

4. Filed March 10, 1995 (Doc. no. 702).

5. Doc. no. 717.

plaintiffs), *aff'd in relevant part*, 503 F.2d 1305 (5th Cir.1974); *Wyatt v. Stickney*, No. 3195–N (M.D.Ala. Aug. 12, 1971) (enlarging plaintiff class); *Wyatt v. Hardin*, No. 3195–N, 1975 WL 33692 (M.D.Ala. Feb. 28, 1975) (enlarging plaintiff class); *Wyatt v. Wallis*, No. 3195–N, 1986 WL 69194 (M.D.Ala. Sept. 22, 1986) (approving proposed consent decree as meeting requirements of Rule 23 regarding class actions); *Wyatt v. Horsley*, No. 3195–N (M.D.Ala. Aug. 3, 1989) (concluding that residents of Kidd facility are subject to *Wyatt* mental-illness standard nine); *Wyatt v. Horsley*, 793 F.Supp. 1053 (M.D.Ala.1991) (rejecting proposed consent decrees because parties did not meet requirements of Rule 23 regarding class actions); *Wyatt v. King*, 793 F.Supp. 1058 (M.D.Ala.1992) (approving proposed consent decrees as meeting requirements of Rule 23 regarding class actions).

Because, among other reasons, none of the named class members remain in state institutions under the supervision or control of the Alabama Department of Mental Health and Mental Retardation, the defendants moved for recertification or modification of the class in December 1994 and supplemented this motion by moving for decertification in January 1995. During a telephone conference held on January 6, 1995, the court expressed its concern over the absence of named class members with live interests in the lawsuit and suggested that new named plaintiffs with live interests intervene.[6] On March 10, 1995, the Hanna plaintiffs moved to intervene. As previously stated, the court conditionally granted the motion subject to reconsideration and briefing by the parties.

## II. DISCUSSION

With their two motions, the defendants argue that the plaintiff class in this lawsuit should be decertified, recertified, or modified. They further oppose reaffirmation of intervention by the Hanna plaintiffs. The court agrees with the defendants that the class needs to be recertified to the extent that its parameters need clarification and its named class members' interests have become moot due to the passage of time. The court disagrees, however, that the plaintiff class should be decertified or modified. The court also concludes that the Hanna plaintiffs should be allowed to continue as parties to this litigation.

### A. Decertification

The defendants advance three arguments in support of their contention that the plaintiff class should be immediately decertified.

### 1. Lack of a Formal Certification Order

■ The defendants argue that the class should be decertified because there is no formal order of certification. Where a lawsuit has proceeded to trial as a class action, the class has been clearly defined and redefined over the years, injunctive relief has been ordered as to the class, all parties and the court have treated the lawsuit as a class action, and for over 20 years no party has suggested that certification was an issue, as is all true in this lawsuit, the case is for all intents and purposes a class action even though no formal certification order has been entered, and neither certification, recertification, nor decertification is required. As the former Fifth Circuit Court of Appeals wrote in *Graves v. Walton County Bd. of Educ.*, 686 F.2d 1135, 1139–40 (1982) (Unit B), "despite the lack of a formal order certifying this case as a class suit, this case was in fact a class action and was specifically described and treated as such by the parties and the trial court.... [T]he district court's implicit determination of the class action question sufficed in a suit in which all the parties and the court proceeded off the assumption that the action was a class action, despite the fact that there existed no formal order of certifi-

---

**6.** Counsel for the plaintiffs have questioned defense counsel's motives in waiting until now to challenge the treatment of this litigation as a class action. Plaintiffs' brief filed on February 6, 1995 (Doc. no. 516), at 2–3. The plaintiffs contend that the defendants have not only waited for years to make this challenge, they have done so in the midst of the plaintiffs' extensive trial preparation, adopting what the plaintiffs characterize as "a strategy of diverting as much of plaintiffs' time from trial preparation as possible." *Id.* at 2. Irrespective of the motive behind the defendants' timing, the issue is important and demands immediate attention.

cation by the district court."[7] *See also Lockett v. Board of Educ.*, 976 F.2d 648, 649 (11th Cir.1992) (per curiam) (reaffirming *Graves* ); *Johnson v. General Motors Corp.*, 598 F.2d 432, 435 (5th Cir.1979) (class action may exist in absence of formal certification order if litigation was conducted as class action); *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir.1973) (same); *Cf. Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 689 (11th Cir.1987) (failure to designate class in judgment may be corrected where lawsuit has been maintained and treated as a class action).[8] Here, the lack of a formal order certifying a plaintiff class does not require decertification.

### 2. Mootness

■ The defendants contend that decertification is required because of mootness of the former named plaintiffs' claims. Where the court is confronted with named plaintiffs who no longer have live interests, the appropriate course is to substitute new named class members. Again, as the appellate court stated in *Graves*, "It is firmly established that where a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot." 686 F.2d at 1138.

### 3. Class Conflict

■ The defendants contend that the class should be immediately decertified because of a conflict of interest within the plaintiff class. The defendants argue that the class is divided between those who advocate community placement of residents and those who oppose it. The defendants' argument lacks merit.

i.

It appears that any conflict within the plaintiff class may have resulted at least in large part from misinformation disseminated by the defendants. The defendants have sent letters to class members, their guardians, caregivers, and next-of-kin informing them that the plaintiffs and their attorneys are seeking to have services for all class members reduced and full deinstitutionalization of the mentally-retarded, that is, to have all mentally-retarded class members now residing in the defendants' developmental centers moved into the community. The defendants failed to state in their letters that the plaintiffs advocate that the defendants be required to develop more extensive and greater community services and that institutionalized residents be given the choice between institutionalization and community placement. With this omission, the defendants left the important misimpression that the plaintiffs seek to close the state's facilities and force patients out without any support services.[9]

---

7. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit.

8. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

9. The defendants sent a letter to guardians of mentally-retarded residents in the state's developmental centers stating:
 "This letter shall serve as notice that the Department of Mental Health and Mental Retardation is currently involved in a lawsuit involving your ward, [name], at the [name] Developmental Center. The plaintiffs' attorneys in this lawsuit claim to represent your ward. One of the Plaintiffs' objectives in this case is to close the state's mental retar-

dation facilities, including [name] Developmental Center."
Plaintiffs' brief filed on February 6, 1995 (Doc. no. 516) (exh. C). The defendants failed to add that the plaintiffs advocate the development of more extensive and greater community services and want to give institutionalized residents the choice, where appropriate, between institutionalization and community placement.
 Other letters were sent to family members and guardians of class members, including the mentally-ill patients, stating:
 "This letter shall serve as notice that the Department of Mental Health and Mental Retardation is currently involved in a lawsuit involving your ward/relative at [name of institution]. The Plaintiffs' attorneys in this lawsuit claim to represent your ward/relative as counsel for the Plaintiff's class members. One of the Plaintiffs' objectives in this case is to substantially reduce the state's mental health facilities."
Plaintiffs' brief filed on February 6, 1995 (Doc. no. 516) (exh. D). Again, with their omission,

To acquiesce to the defendants' contention and conclude that the plaintiff class is in conflict and due to be decertified, when that conflict may have largely resulted from misinformation spread by the defendants, would not only be illogical, it would be manifestly unjust. Also, because of the dissemination of this misinformation, it is now almost impossible to determine at this time the degree and nature, if any, of true conflict within the class. In any event, the remedy for the so-called conflict at this point should be to provide the class with correct information and continually to reevaluate any expressions of conflict within the class.

The court emphasizes that, although it appears that the defendants may have misinformed the plaintiff class regarding the named plaintiffs' contentions in this litigation, the court should not be understood to have agreed that these contentions have legal merit. As will be explained later, the legal merit, if any, in the named plaintiffs' contentions are not before the court at this time. Nor should the court be understood to imply that the defendants may not themselves express to the public, including class members and their representatives, the defendants' views on how this litigation should proceed. Indeed, irrespective of the outcome of the issues now before this court, open and public debate of these issues among all concerned can only be healthful.

ii.

In addition, the fact that there are some plaintiff class members who, though correctly informed of the named plaintiffs' position on community placement in this litigation, still do not agree with it, does not necessarily warrant decertification at this point. First of all, in large and complex litigation such as this one, potentially involving thousands of class members and scores of legal issues, many of them convoluted and difficult, it would be impossible to obtain and maintain

100% agreement within the class as to all matters. To impose such a requirement would, in effect, preclude the use of the class action device in many of the very cases where it could be most advantageous.

■■■ ■Therefore, the question should not be whether there is a 100% concurrence of interests within the class, but rather whether the class as a whole and as to some primary issues being litigated is being adequately represented. Rule 23 "does not require that *all* questions of fact and law be common, but only demands that a question of law *or* fact be presented which is shared in the grievances of the prospective class as defined." 3B James W. Moore et al., Moore's Federal Practice ¶ 23.06–1 at 23–159 (2d ed. 1995). *See also Weiss v. York Hospital* 745 F.2d 786 (3rd Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); *Ventura v. New York City,* 125 F.R.D. 595 (S.D.N.Y.1989); *Wilcox v. Petit,* 117 F.R.D. 314, 317 (D.Me.1987); *In re Gulf Oil/Cities Serv. Tender Offer Litigation,* 112 F.R.D. 383 (S.D.N.Y.1986). The issue of community placement is only one of many important, complex and difficult issues confronting the court. Although class certification may not be proper when the class includes "members who disagree about the propriety of relief" generally, *Miles v. Metropolitan Dade County,* 916 F.2d 1528 (11th Cir.1990), the fact that there may be class members who disagree with the named class on one issue does not warrant dispensing with the utility of the class device as to all other important issues. *See Horton v. Goose Creek Ind. Sch. Dist.,* 690 F.2d 470, 487 (5th Cir.1982) (value of class action device and availability of corrective procedures outweighs danger of antagonism within class), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

Moreover, there are many procedural safeguards available under the Federal Rules of Civil Procedure that can be brought into play

the defendants presented a false picture of the plaintiffs' position in this litigation.

These letters went on to state that the Department was objecting to producing class members' records to plaintiffs' attorneys and encouraged the guardian or family member to contact the Department if he or she objected to counsel having access to their ward's records. These

letters were sent to guardians after the Magistrate Judge specifically cautioned the defendants not to "encourage" plaintiffs and their guardians to object to producing the class members' records without explicit approval of the district court—approval which was not obtained. Transcript of July 21, 1994 proceedings before United States Magistrate Judge McPherson, at 69.

if a clear conflict develops. *See Social Services U., Local 535 v. Santa Clara County*, 609 F.2d 944, 948 (9th Cir.1979) ("If at any time before, during, or after trial it appears that ... [the representatives] no longer fairly and adequately protect the interests of the class ... [o]ne or more of the many available procedural safeguards can be brought into play to protect the absentees."). For example, Rule 23(c)(4) allows for certification of a class "with respect to particular issues." Therefore, if a class member differs with how the named plaintiffs are pursuing a particular issue and wishes to pursue that issue as a representative of a subclass, that member may seek to intervene to represent a subclass as to that issue. No class member has sought intervention to represent the class, or a subclass, as to an issue at this point.[10] The court would certainly consider such a motion if it were brought and might even initiate the formation of a subclass on a specific issue if it appeared necessary to assure adequate representation of plaintiffs.

■ Finally, decertification is not warranted at this time because it appears that the position of those class members who might oppose named plaintiffs on community placement issues is already being adequately—indeed, aggressively—advanced in this litigation by the defendants. *See Horton*, 690 F.2d at 487 (although some plaintiff class members approved of school drug searches in case challenging the searches' constitutionality, class was appropriate where approving students' interests were aggressively represented by defending school district); *Dierks v. Thompson*, 414 F.2d 453, 457 (1st Cir.1969) (although not all plaintiff class members agreed with every goal pursued by named plaintiffs, plaintiff class was appropriate because the interest of the disagreeing plain-

tiffs was adequately represented by defendants in the litigation).[11]

Of course, if the defendants were to abandon their strong opposition to the named plaintiffs' position in this litigation, and if it appeared that there was still credible opposition within the plaintiff class to the named plaintiffs' position, the court would seriously have to consider taking measures to assure that opposition from within the class was being adequately addressed in the litigation. Consideration of the views of class members opposed to positions taken by the named plaintiffs and their counsel would not be new to this litigation. In 1991, the court sustained an objection from parts of the plaintiff class to several proposed consent decrees even though the decrees had the support of counsel for both plaintiffs and defendants. *Wyatt v. Horsley*, 793 F.Supp. 1053, 1056 (M.D.Ala.1991).

### B. Modification or Recertification

The defendants argue, in the alternative, that the class should be modified or recertified. They request that the court do the following: appoint new class representatives and new class counsel; explicitly state who is in the class; clarify whether this is a Rule 23(b)(2) or (b)(3) class action; permit the plaintiffs to opt out of the class pursuant to Rule 23(b)(3) if they wish; and issue notice to class members pursuant to Rule 23(d)(2). The court agrees that the class should be recertified to the extent that its parameters should be clarified and new named representatives, with live interests, brought in to represent the class. The court concludes that current class counsel are providing excellent representation to the plaintiff class and that to appoint new class counsel would be point-

10. Admittedly, William Edward Haas sought to intervene in this cause as next friend and legal guardian of his daughter, a mentally incompetent woman who is now a resident of one of the state's institutions for the mentally retarded and mentally ill. He took issue with how the named plaintiffs were pursuing certain issues. The court rejected Haas's effort because he wanted to pursue only individual relief on behalf of his daughter and not class relief as to these issues. *Wyatt v. Hanan*, No. 3195–N (M.D.Ala. Feb. 15, 1995). The court explained that to allow all guardians and other similar representatives to

intervene to pursue only individual relief "would render this lawsuit more unmanageable and unnecessarily confusing than it already is." *Id.* at 11.

11. The court similarly found with regard to Haas, *see supra* note 10, that his intervention was not necessary because the issues he sought to pursue were already being adequately pursued in the litigation. *Wyatt v. Hanan*, No. 3195–N (M.D.Ala. Feb. 15, 1995), at 9–10.

less and, more than likely, hurt the class's interests. The court further concludes that this lawsuit is a Rule 23(b)(2) class action. As to notice, the court will require that the parties establish procedures for providing regular notice to the class and for allowing plaintiffs' counsel regular access to class members.

In order to represent a class of allegedly similarly situated individuals, the proposed named plaintiffs must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Additionally, a class must meet one of three conditions stated in Rule 23(b) which make a class action the preferable mode of handling the lawsuit. If the four requirements of Rule 23(a) and one of the conditions of Rule 23(b) are met, then the class may be certified. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982).

Before addressing these five criteria, however, the court examines the parameters of the class that is to be recertified because the parties are not in agreement over its exact contours.

### 1. Class Definition

The parties are in agreement over the definition of the mentally-retarded portion of the class, but disagree over who comprises the mentally-ill portion of the class. The mentally-retarded portion of the class consists of all mentally-retarded residents who live in the Alabama Department of Mental Health and Mental Retardation's developmental centers, or any home or facility, public or private, to which an individual has been assigned or transferred by the Department.[12] The parties' disagreement as to the mentally-ill portion of the class is over whether this class consists of only involuntarily committed, or both voluntarily and involuntarily committed patients who reside in the Department's hospitals, or any other centers, homes, or facilities, public or private, to which an individual is assigned or transferred by the Department. The defendants contend that the *Wyatt* orders and the law apply only to involuntarily committed mentally-ill patients and do not apply to the voluntarily committed.

The plaintiffs correctly observe that the parties and the court have historically treated the voluntarily-committed mentally-ill patients as part of the class. The class originally consisted of mentally-ill patients at Bryce Hospital. In 1971, the court expanded the class to include mentally-ill patients at Searcy Hospital and mentally-retarded residents at the Partlow State School and Hospital. *Wyatt v. Stickney,* No. 3195–N (M.D.Ala. Aug. 12, 1971). In 1975, the court held that it was "necessary and proper to extend to all facilities in which the mentally ill and emotionally disturbed are cared for and treated by the state the minimal constitutional standards for adequate treatment of the mentally ill which ha[d] previously been established for Bryce and Searcy Hospitals." *Wyatt v. Hardin,* No. 3195–N (M.D.Ala. Feb. 28, 1975). Thus, the court expanded the class to include *all* mentally-ill patients at any facility or hospital operated by the Department. This has been repeatedly interpreted by the court and parties to include both voluntarily and involuntarily committed patients. For example, in 1989 the court required the parties to adhere to the *Wyatt* standards regarding electro-convulsive treatment at its Kidd facility. *Wyatt,* No. 3195–N (M.D.Ala. Aug. 3, 1989). The patients at the Kidd facility are predominantly geriatric patients and many, if not all, are considered by the defendants to be voluntarily committed. As previously indicated, when the parties and court have treated a group as a class and ordered relief as to that group as a class, they are, in fact, a class, even in the absence of a formal certification order. *See Graves,* 686 F.2d at 1136–40; *Johnson,* 598

---

12. *See Wyatt v. Hardin,* No. 3195–N (M.D.Ala. Feb. 28, 1975) (expanding and defining class); court's exh. 2 (agreed upon standards for mentally-retarded class members).

F.2d at 435; *Bing*, 485 F.2d at 447.[13]

The defendants respond that a 1992 order by this court approving several consent decrees superseded prior definitions of the class and narrowed the mentally-ill portion of the class to include only involuntarily committed patients. *Wyatt v. King*, 793 F.Supp. 1058 (M.D.Ala.1992). The plaintiffs counter that the intent behind the change in certain definitions was to clarify "that the standards for treatment of people with mental illness apply not only to 'hospitals' but to all state-operated 'facilities,'" *id.* at 1063, and not to redefine the class to exclude the voluntarily committed. The plaintiffs note that at no time during the Rule 23 approval process of the decrees was the impact of the decrees on the interests of voluntarily committed patients considered by the parties or, more importantly, by the court in making its required determination that the decrees were "fair, adequate and reasonable" as to the class. *Id.* at 1061.

■ Whether voluntarily committed patients are due relief in this lawsuit is not, however, an issue for resolution at this time. The definition of the class for certification purposes is a procedural question distinct from the merits of the lawsuit. "[T]he question is not whether the plaintiff or plaintiffs ... will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974); *see also Love v. Turlington*, 733 F.2d 1562, 1565 (11th Cir.1984); *Jordan v. Swindall*, 105 F.R.D. 45, 46–47 (M.D.Ala. 1985). Therefore, the question before the court is not whether the plaintiffs, voluntarily or involuntarily committed patients, will prevail or be entitled to relief, but whether the

requirements of Rule 23 are met—that is, whether the proposed class of plaintiffs, both the voluntarily and involuntarily committed, meet the numerosity, commonality, typicality, and representativeness requirements of Rule 23. Indeed, if together they do, it is essential that the interests of the voluntarily committed be adequately represented in this litigation when the court does ultimately reach the issue of whether the 1992 consent decrees narrowed the reach of the *Wyatt* mental-illness standards to apply to only the involuntarily committed.

### 2. Numerosity

■ The numerosity requirement of Rule 23(a)(1) is satisfied if joinder of all plaintiff class members would be impracticable. In this case the class is so numerous that joinder is impracticable. There are approximately 1,000 mentally-retarded individuals in the defendants' institutions and well over 1,000 mentally-ill patients in their institutions. This requirement is therefore met.

### 3. Commonality and Typicality

Rule 23(a)(2) & (3)'s requirements of commonality and typicality "tend to merge." *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. Both requirements serve to ensure that the "maintenance of a class action is economical" and that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

■ These requirements are also met. The named plaintiffs share multiple interests and claims identical to the class members' claims. The mentally-ill named plaintiffs claim, among other things, that they do not

---

**13.** The court notes that many "voluntary" patients are not exactly voluntary. To be a voluntary patient, an individual must be able to leave the institution if he or she so desires. "To the extent that patients might be prevented from leaving," whether they entered voluntarily or not, "they become involuntary patients." *Doe v. Public Health Trust of Dade County*, 696 F.2d 901, 903 n. 10 (11th Cir.1983) (per curiam). For example, the status of many patients who are admitted as involuntary civil commitments is nominally changed to "voluntary" when the patients no longer meet the criteria for commit-

ment, but the defendants are unable to find a suitable community placement. Additionally, the majority of patients who reside at the Kidd, Allen, and Box nursing facilities are incompetent. The admission and continued stay of an incompetent individual in a locked facility cannot be considered voluntary in any true sense of the word. *See, e.g., Zinermon v. Burch*, 494 U.S. 113, 133–34, 110 S.Ct. 975, 987–88, 108 L.Ed.2d 100 (1990); *Doe v. Austin*, 848 F.2d 1386, 1392 (6th Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 531 (1988).

receive adequate treatment, that their safety is threatened, and that, if appropriate, they would like to live in the community. For example, several of the named class members contend that there is no reason for their continued institutionalization other than a lack of community services. One also alleges that when he has been released in the past, he has not received adequate transitional and community care. The mentally-retarded named plaintiffs claim, among other things, that they are denied a safe environment and, in fact, have been physically abused while in the defendants' care. They also claim that they receive inadequate habilitation and have been denied the opportunity to reach their potential because the defendants have not given them an informed choice to live in the community. These claims are all common to and typical of the class.

### 4. Adequate Representation

The adequacy inquiry is two-fold. First, the court must assure itself that the named representative will adequately and diligently represent the class members' interests and that no potential conflicts in interest will interfere with this representation. Due process requires this. *Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 118–19, 85 L.Ed. 22 (1940). Second, the court must determine that the class's attorneys will adequately represent the class's interests.

The inquiry into the adequacy of the named representative tends to merge with the commonality and typicality requirements, because the extent of the identity of interests bears on the adequacy of the representative. *See Nelson v. United States Steel Corp.*, 709 F.2d 675, 679 n. 10 (11th Cir.1983); *Wynn v. Dixieland Food Stores, Inc.*, 125 F.R.D. 696, 700 (M.D.Ala.1989). As discussed previously, if a group of persons has suffered injuries at the hands of the same policy or action, then they have a commonality of interests. The plaintiffs' claims therefore are coextensive with those of the class as a whole. In addition to the coextensiveness of interests, several other factors are relevant to the adequacy of representation issue: whether the named members' interests are antagonistic in any way to the interests of those whom they seek to represent, the proportion of those made parties to the total class membership, and any other facts bearing on the ability of the named parties to speak for the rest of the class. *Jordan*, 105 F.R.D. at 48. The court finds that these additional factors all weigh in favor of certification. As explained earlier in rejecting the defendants' motion for decertification, there are no apparent conflicts of interest that warrant rejection of class certification. Although the class is very large, there are enough named plaintiffs to enable adequate representation. And finally, the named plaintiffs are effective representatives. The mentally ill plaintiffs were all able to speak eloquently and forcefully at trial about their own experiences on behalf of the members of the class. The two mentally-retarded plaintiffs both have very active parents who were able to speak for them at trial. These factors strengthen the proposed named plaintiffs' ability to represent the plaintiff class. The named plaintiffs are adequate representatives of the class.

There can be no question that class counsel have provided excellent representation and zealous advocacy to their clients. They secured a preliminary injunction regarding conditions of safety for children at the Eufaula Adolescent Center, *Wyatt v. Poundstone*, 892 F.Supp. 1410 (M.D.Ala. 1995); negotiated improvements to the *Wyatt* standards, *e.g., Wyatt v. Poundstone*, No. 3195–N, 1995 WL 430939 (M.D.Ala. July 11, 1995); *Wyatt v. King*, 793 F.Supp. 1058 (M.D.Ala.1992); defeated the defendants' efforts to vacate important and crucial *Wyatt* standards, *Wyatt v. King*, 803 F.Supp. 377 (M.D.Ala.1992); *Wyatt v. King*, 811 F.Supp. 1533 (M.D.Ala.1993); and have assembled an able team of lawyers to defend the plaintiffs' interests.

Nevertheless, the defendants contend that the plaintiffs' attorneys have not been adequate class representatives because they examined clients' records without first obtaining the guardians' permission. However, both the United States Magistrate Judge and this court upheld plaintiffs' counsel's right to do so. The defendants contend that the plaintiffs' counsel were negligent for

not issuing a notice to all class members and their families and guardians concerning the status of the case. However, the plaintiffs' counsel must rely on the defendants to post their notices in state facilities and to provide the names and addresses of all guardians, next-of-kin, and caregivers. This has been a point of deep conflict between counsel for plaintiffs and counsel for the defendants, and to the extent that the plaintiff class has received inadequate notice, the defendants are not blameless. Plaintiffs' counsel's failure to communicate effectively with the class is not a basis for a finding of inadequate representation at this time. In any event, the issue of notice is addressed later in this order.

■ Finally, borrowing language from an earlier opinion in which the court refused to approve a proposed consent decree submitted by both plaintiffs and defendants, the defendants contend that class counsel has become "'the *dominus litus*,' that is, the true master of the lawsuit." *Wyatt v. Horsley*, 793 F.Supp. 1053, 1056 (M.D.Ala.1991). In that opinion, the court did not say that the plaintiffs' counsel had become the master in this litigation, but rather cautioned all parties (both plaintiffs and defendants) that this was a risk unless, "to the extent plaintiffs' counsel cannot receive input from class members, he . . . seek[s] it from such secondary sources as public interest organizations, former mental patients, and family members and caregivers who have day-to-day contact with class members in the state's institutions." *Id.* The court recognized the "difficulties class counsel faces in endeavoring to solicit the views of . . . persons" who "are unlikely to be able to . . . voice their comments." *Id.* The plaintiffs' counsel heeded this caution, and counsel for both the plaintiffs and defendants subsequently submitted a new proposed decree which was approved by the court. *Wyatt v. King*, 793 F.Supp. 1058 (M.D.Ala.1992).

The attorneys from the Bazelon Mental Health Center have been representing the plaintiff class for several years, and the lead attorney, Mr. Ira Burnim, has been representing the plaintiffs since at least October 1982. The court has thus had a great deal of time and many opportunities to observe plaintiffs' attorneys and to assess their representation of the plaintiff class. It is no easy task to represent such a plaintiff class in a lawsuit that has been ongoing for so many years and in which there are multiple and complex legal issues. It is also quite difficult to represent a class of plaintiffs who are unlikely to be able to "voice" their interests themselves. *Wyatt*, 793 F.Supp. at 1056. Yet, as this court has previously noted, counsel for the plaintiff class, Mr. Ira Burnim, "is to be strongly commended for the sensitive and effective manner" in which he has represented the plaintiff class. *Wyatt*, 793 F.Supp. at 1062 n. 7.

The defendants further contend that the named plaintiffs and plaintiffs' counsel are not adequate because of a conflict of interest. The court has already rejected this contention. The court therefore finds the defendants' allegations of inadequate representation to be baseless.

### 5. *Rule 23(b)(2) or (b)(3) Class*

■ The plaintiffs contend that the class should be certified under Rule 23(b)(2), which is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The defendants contend that the class should be certified, if at all, under Rule 23(b)(3), which is appropriate when the court find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Under Rule 23(b)(3), notice must be sent to all class members and they must be given the opportunity to opt in or opt out of the class. Fed.R.Civ.P. 23(c)(2).

The court disagrees with the defendants. In this lawsuit, Rule 23(b)(2) is more applicable to the class. The defendants have acted on grounds generally applicable to the class, "thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). As the commentary to Rule 23

states, subdivision (b)(2) is generally applicable to civil-rights lawsuits, although it is not limited to them. Subdivision (b)(3) is meant to apply to situations where a class action is "not clearly called for" by subdivisions (b)(1) or (b)(2). Because subdivision (b)(2) applies, the court need not apply subdivision (b)(3). *See Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir.1973) (Rule 23(b)(2) actions are generally preferred over (b)(3) actions where (b)(2) is applicable).

For the reasons stated above, the plaintiff class should be recertified pursuant to Rule 23(a) & (b)(2) of the Federal Rules of Civil Procedure as a class of mentally-ill and mentally-retarded individuals who live in hospitals, centers, facilities, or homes, public or private, to which the individual has been assigned or transferred by the Department.

## C. Notice to and Contact with the Plaintiff Class

 Because the plaintiff class will be recertified pursuant to Rule 23(a) & (b)(2), notice need not be sent to class members and class members need not be given the opportunity to opt out. However, counsel for both plaintiffs and defendants agree that notice should be given to class members regarding issues in and the status of this litigation. In addition, the court believes that, in light of past conflicts between counsel for defendants and counsel for plaintiffs over access to members of the plaintiff class, a structure should be established in which plaintiffs' counsel could have regular and adequate access to the plaintiff class. The court will therefore require that the United States Magistrate Judge, with input from counsel for both plaintiffs and defendants, fashion the following within 45 days:

● A procedure by which plaintiffs' counsel may give the plaintiff class (including their guardians, caretakers, next-of-kin, and attor-

neys) immediate notice of the issues in and status of this litigation.

● A procedure which will allow plaintiffs' counsel to give to the plaintiff class (including their guardians, caretakers, next-of-kin, and attorneys) regular and adequate notice of the issues in and status of this litigation.

● A procedure by which plaintiffs' counsel may have regular and adequate access to the plaintiff class (including their guardians, caretakers, next-of-kin, and attorneys).

## D. Intervention

For the reasons previously stated, the Hanna plaintiffs' motion to intervene should be granted. Rule 24 of the Federal Rules of Civil Procedure governs intervention. A party may intervene as of right or with permission of the court. Under subsection (a)(2) to Rule 24, a party seeking to intervene as a matter of right must meet the following requirements: (1) the application must be timely; (2) the interest asserted must relate to the property or transaction that is the subject of the action; (3) the applicant must be situated such that disposition of the action may impede or impair the applicant's ability to protect that interest; and (4) the interest asserted must be represented inadequately by the existing parties to the lawsuit. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir.1989).[14] If these four requirements are all met, intervention must be granted. *Id.* at 1213. These four requirements are all met for the same reasons the court has stated that recertification is appropriate.

Intervention is also appropriate as a matter of discretion. Under Rule 24(b)(2), a court has discretion to allow intervention if an applicant can show that (1) the application to intervene is timely and (2) the claim or defense to be asserted and the main action have a question of law or fact in common.[15]

---

**14.** Subsection (a)(2) to Rule 24 provides:

"Upon timely application anyone shall be permitted to intervene in an action: ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability

to protect that interest, unless the applicant's interest is adequately represented by existing parties."

**15.** Subsection (b)(2) to Rule 24 provides:

"Upon timely application anyone may be permitted to intervene in an action: ... when an applicant's claim or defense and the main ac-

*Chiles,* 865 F.2d at 1213. For the same reasons recertification is appropriate, these requirements are also met. Thus, the court reaffirms its earlier conditional order granting the Hanna plaintiffs' motion to intervene.

Accordingly, it is ORDERED as follows:

(1) The court reaffirms its order of March 14, 1995 (Doc. no. 717), and grants the plaintiffs' motion for intervention, filed on March 10, 1995 (Doc. no. 702);

(2) The defendants' motion to recertify or modify the plaintiff class, filed December 22, 1994 (Doc. no. 417), and supplemental motion to recertify or modify the plaintiff class and alternative motion to decertify the plaintiff class, filed January 18, 1995 (Doc. no. 456), are granted to the extent that the plaintiff class is recertified, and the motions are denied in all other respects;

(3) A plaintiff class consisting of all current and future mentally-retarded and mentally-ill residents of any facility, hospital, center, or home, public or private, to which they are assigned or transferred for residence by the Alabama Department of Mental Health and Mental Retardation, is certified pursuant to Fed.R.Civ.P. 23(a) & (b)(2), to be represented by Robert Hanna, Gregory Wolke, Jean Washington, Brent Bugsch, Benjamin Stokes, Stephanie Ramsey, and Eric Boothe; and

(4) The United States Magistrate Judge, with input from counsel for both plaintiffs and defendants, shall fashion and recommend to the court the following within 45 days from the date of this order:

(A) A procedure by which plaintiffs' counsel may give the plaintiff class (including their guardians, caretakers, next-of-kin, and attorneys) immediate notice of the issues in and status of this litigation;

(B) A procedure which will allow plaintiffs' counsel to give to the plaintiff class (including their guardians, caretakers, next-of-kin, and attorneys) regular and adequate notice of the issues in and status of this litigation; and

tion have a question of law of fact in common.... In exercising its discretion the court shall consider whether the intervention will

(C) A procedure by which plaintiffs' counsel may have regular and adequate access to the plaintiff class (including their guardians, caretakers, next-of-kin, and attorneys).

unduly delay or prejudice the adjudication of the rights of the original parties."