**Walter W. DIERKS et al., Plaintiffs, Appellees,**

**v.**

**Rupert C. THOMPSON et al., Trustees, Defendants, Appellants.**

**No. 7293.**

United States Court of Appeals
First Circuit.

Heard June 4, 1969.

Aug. 8, 1969.

Jay H. Topkis, New York City, with whom Edward F. Hindle, Providence, R. I., Allan Blumstein, David A. Rahm and Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, were on brief, for appellants.

Leon L. Rice, Jr., Winston-Salem, N.C., with whom Joachim A. Weissfeld, Earle McGee Rice, Anderson, S. C., Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., and Graham, Reid, Ewing & Stapleton, Providence, R. I., were on brief, for appellees.

Jerome P. Facher and Hale & Dorr, Boston, Mass., on brief for William G. Rose and others, amici curiae.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal from a judgment declaring rights of former employees under a pension plan. In 1951 Textron, Inc., a Rhode Island corporation, established a non-contributory profit-sharing pension plan for its salaried employees and, upon the determination of its board of directors, for salaried employees of wholly owned subsidiaries. In 1955, it disposed of its last participating subsidiary. In 1957 a subsidiary, Amerotron Company, whose employees did not participate, was absorbed by Textron. Its plants and operations became known as Amerotron Division of Textron, and certain of its employees, having become employees of Textron, became members of the plan. In April 1963 Textron sold the assets pertaining to the Amerotron

Division and the employees working there became employees of the purchaser. The defendants, trustees of the plan, notified these former employees what, in their view, was the effect upon their interests.

The plaintiffs are some 20 of the 382 former employees of the Amerotron Division. They brought the present proceedings assertedly as a class action on behalf of themselves and others seeking one or the other of two alternative constructions of the plan, both contrary to the one announced by the defendants. The district court adopted the second of plaintiffs' contentions and the defendants appeal.

In the district court the parties stipulated all of the facts, and, in addition, stipulated to this being a proper class suit and to the court's consequent jurisdiction. There being some question in our mind as to jurisdiction, we invited further briefs.[1]

The basic dispute between the parties is whether plaintiffs' active interest in the plan terminated under Article VI, or under Article X. The plan, as will be developed later, contained broad powers of amendment. As of April 1963 Article VI, ¶ 6.01(a), provided in part, "The full amount of a Member's account shall become nonforfeitable upon termination of employment * * *." Paragraph 6.02 provided, "Any nonforfeitable interest in the fund shall be distributable only as provided in paragraph 6.04 * * *." Paragraph 6.04, quoted in part in the margin,[2] provided that the terminated employee's share in the fund should be ascertained forthwith and the amount so determined held as a fixed charge against the fund, to be paid upon the same terms and times (viz., total disability, death, or the attainment of age 65) as if the employee had continued his employment. In other words, the former employee's interest in the fund would no longer be increased as a result of employer contributions, nor would it grow, or shrink, as it had before, dependent upon the changing market value of the total assets.

If the former employee's interest fell under Article X it would not be in a fixed amount, but would be a percentage interest in a fund which would vary in size, depending upon the state of the market and the wisdom of the defendants' investment policies.[3] In plaintiffs' view, which subsequent experience has borne out, this was a desirable difference.

---

1. Defendants did not respond. Plaintiffs failed to deal with subsections 3 and 4 of F.R.Civ.P. 23(a).

2. "6.04 Distribution shall be made by the Trustees from the Trust Fund for the Members only at the following times and in the following manner:
   (a) As soon as feasible after termination of membership of a Member with respect to whom any portion of whose account has become nonforfeitable as provided in paragraph 6.01, the Trustees shall determine the distributable amount of his account which shall be an amount equal to the balance of his account as of the close of business on the December 31 preceding or concurrent with such termination. Such amount is herein generally referred to as the 'distributable amount.'
   * * * * *
   (b) (2) The Trustees shall continue to hold, as part of the mingled fund, the balance of the distributable amount * * * until the death of such former Member when it shall be distributed in accordance with subparagraph (c) hereof or until such former Member shall become totally disabled or shall attain age 65 when the Trustees shall distribute such amount to such former Member in a single cash payment, whichever of such events shall first occur.

3. Provided, of course, the employees did not draw down their shares. In their complaint plaintiffs initially sought such a right. In the representational aspect of a class suit that we will later discuss, this alternative claim might or might not be regarded as increasing the ambivalence of plaintiffs' position. *Cf.* Redmond v. Commerce Trust Co., 8 Cir., 1944, 144 F.2d 140, cert. denied 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620. The court held against this claim, and plaintiffs do not appeal. We do not find it necessary to consider separately this jurisdictional issue, as it raises no additional problem.

■ The first question is that of the jurisdictional amount. The individual interest of many of the plaintiffs does not reach the sum of $10,000. Hence there is no jurisdiction through aggregation unless there is a joinder in interest that results in a "true" class suit. Snyder v. Harris, 1969, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319. Since plaintiffs, in one aspect, are seeking to establish a trust fund as distinguished from individual cash claims against the defendants, however, we are satisfied, subject to a reservation which we will come to shortly, that this is a proper class suit. *See* Berman v. Narragansett Racing Ass'n, Inc., 1 Cir., (7/31/69) 414 F.2d 311, and cases cited. The fact that the individual plaintiffs' beneficial interests may be of fixed proportion does not vary the fact that the existence of a single trust res is of common importance.

■ There is, however, a further requirement. In order to maintain a class suit plaintiffs must be truly representational.[4] The reason for this has been well expressed in Carroll v. American Federation of Musicians, 2 Cir. 1967, 372 F.2d 155, at 162, vacated and remanded on other grounds, 391 U. S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460.

"In a true class action, all of the members of the class, including those absent, are bound by the judgment. See Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); Dickinson v. Burnham, 197 F.2d 973 (2 Cir.), cert. denied 344 U.S. 875, 73 S.Ct. 169, 97 L. Ed. 678 (1952); Giordano v. Radio Corporation of America, 183 F.2d 558 (3 Cir. 1950). Therefore the in-

terests of the affected persons must be carefully scrutinized to assure due process of law for the absent members. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Since all members of the class are to be bound by the judgment, diverse and potentially conflicting interests within the class are incompatible with the maintenance of a true class action."

Unless the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by the other members of the class, it would be inequitable to recognize plaintiffs as representative, and a violation of due process to permit them to obtain a judgment binding absent plaintiffs. Hansberry v. Lee, 1940, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22; *cf.* Giordano v. Radio Corp. of America, 3 Cir. 1950, 183 F.2d 558.

In the case at bar, while the suing plaintiffs may have been of the opinion that wise management or other factors would cause the fund to grow, others could well have thought that a vested obligation in a fixed amount would be more desirable than to incur investment risks.[5] Under such circumstances the court could not have found that plaintiffs were "typical" of the former Amerotron employees whom they purported to represent; they were typical of only one of two conflicting groups. Under the Rule, and as a matter of due process, plaintiffs could not represent both groups.

■ It may be asked whether under a liberal construction of the Rule,[6] the court may describe a class that is limited to those who like the relief sought,

---

4. "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if * * * (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. Rule 23(a) (3), (4).

5. In point of fact a substantial number of plaintiffs' former co-employees have since filed papers disassociating themselves from the suit, and asking to be excluded from any judgment entered in favor of the plaintiffs herein.

6. *See, e.g.,* Rule 23(c) (3).

after the others have had an opportunity to opt out.[7] We do not reach this question or the possible question of due process that such a construction might produce. In the present case there is an easier answer. The defendant trustees are not simply stakeholders, but from the outset have themselves actively supported the position of this second group of former employees. Therefore, while it is not true that plaintiffs, as they would claim, represent all Amerotron employees, it is true that any whom they do not represent are represented by the defendants. Accordingly, we find the requirements of due process to be satisfied.

Turning to the merits, plaintiffs' claim that the discontinuance of membership in the plan of the Amerotron Division constituted a termination under Article X, *supra,* requires a determination that the Amerotron Division was itself an "Employer." This is directly contrary to the plan's definitional provision, Article I, ¶ 1.04(d).

> " 'Employer' means the Company and any of the Subsidiary Companies referred to in subparagraph (c). When the word 'Employer' is used with reference to particular Eligible Employees, it shall be deemed to refer to the employer by which such eligible employees are employed."

Plaintiffs contend, in spite of this language, that the plan was ambiguous, and that a "division" of the parent company, as well as a subsidiary, was a separate employer.

Our first response to this is that we perceive no ambiguity, but find the language of the plan too plain to permit of alternative constructions. However, even if we were to think otherwise, we would disagree with the district court. Should it be thought that there was ambiguity, the court's approach, as its opinion reveals, 295 F.Supp. 1271, involves two errors. The first is its ruling that the plan is to be interpreted most favorably to the beneficiaries. While we might not quarrel with this general principle of construction in certain instances, under the facts of this case as we have detailed them, viewed as of April 1963 it could not be told what interpretation might be thought more favorable to the beneficiaries. Rather, this was a matter of individual judgment. The rule was, accordingly, inapplicable.

■ Of greater importance, the court overlooked other pertinent provisions of the plan. The plan was freely amendable under Article XIII.[8] That meant that until a beneficiary's rights became vested by termination of his employment, he could be deprived of future increases in benefits by the unilateral act of Textron. In the case of an irrevocable, unamendable trust a change in circumstances arguably not expressly contemplated or covered may be met by a process of construction designed to discover what, presumably, would have been the settlor's intent had he foreseen those particular circumstances. *Cf.* Manufacturers Nat. Bank of Troy v. McCoy, 1965, 100 R.I. 154, 212 A.2d 53, at 55. In the case at bar, no such speculation could arise. Three times since 1955, when there ceased to be any participating subsidiaries, a division whose employees had been participating Textron employees, was disposed of. Each time, presumably to the necessary knowledge of Textron, these terminated employees were recognized under Article VI, not Article X. If Textron meant for a change in the specific language of the plan, in the manner found by the court, it could have amended the plan so to provide, and have removed the now alleged ambiguity. The record discloses that although Textron made many amendments in the plan during this period, none was made to change "subsidiary" in paragraph 1.04(d) to "division."

---

7. It is agreed that all interested parties received adequate notice of the suit.

8. "[T]he Company shall have the right to amend this Agreement at any time and from time to time, to any extent that it may deem advisable."

When Textron made no amendment in this particular while free to do so, there was no occasion for, and no room for, the court to find that Textron's intent was other than what its own conduct disclosed. We do not find the plan ambiguous, but if it was, plaintiffs have not met the burden of establishing their construction.

The judgment of the district court is reversed. The case is remanded for the entry of a judgment declaring that the plaintiffs' rights are governed by Article VI.