**Phillip GROOVER, et al., Plaintiffs,**

v.

**MICHELIN NORTH AMERICA, INC., Defendant.**

No. CIV. A. 97–A–1780–E.

United States District Court, M.D. Alabama, Eastern Division.

March 15, 2000.

Clarence M. Small, Jr., Christopher S. Berdy, Rives & Peterson, James W. Davis, Galloway & Moss, L.L.C., L. Vastine Stabler, Jr., Birmingham, AL, Thomas L. Rountree, Deputy, District Atty., Ouachita Parish District Attorney's Office, Monroe, LA, for Plaintiffs.

Stephen E. Brown, Jeffrey A. Lee, Maynard, Cooper & Gale, P.C., Birmingham, AL, John J. McGowan, Jr., Baker & Hostetler, Cleveland, OH, for Defendant.

## *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

The Defendant in this case, Michelin North America, Inc. ("Michelin") has filed a Motion to Decertify the class that is conditionally certified in this action. It is the continuing duty of the trial court to reexamine the issue of class certification at every stage of the proceedings. *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986). After a careful review of the arguments and grounds set forth in Michelin's Motion, and for the reasons discussed below, the court determined that Michelin's Motion to Decertify was due to be DENIED at this time. An Order denying Michelin's Motion was entered on March 14, 2000, with Memo-

randum Opinion to follow. This is that Opinion, explaining the court's reasons for denying the Motion.

## II. DISCUSSION

### A. *Adequacy of Representation*

A class action cannot be certified in face of conflicts of interest between class members over issues in contention in the lawsuit. *See Hansberry v. Lee*, 311 U.S. 32, 43–45, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Michelin has pointed to seventy-five class members who have publicly stated that they do not agree with this lawsuit and that they would prefer that their welfare benefits be determined in the manner that has always been used—that is, they would prefer to maintain the status quo. The question before the court, therefore, is whether disapproval of this lawsuit by some of the class members is sufficient to preclude class treatment on the ground of inadequate representation.

In some cases, courts have certified classes such as this without addressing the issue of whether such disapproval precludes class treatment. *See, e.g., Lansdale v. Tyler Junior College*, 318 F.Supp. 529 (E.D.Tex.), *aff'd on other grounds*, 470 F.2d 659 (5th Cir.1972) (en banc), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2268, 36 L.Ed.2d 964 (1973); *Sullivan v. Houston Independent School District*, 307 F.Supp. 1328 (S.D.Tex.), *vacated*, 475 F.2d 1071 (5th Cir.), *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973). Other cases have noted that unanimity is an impossible goal and is not a prerequisite to a class action. *Horton v. Goose Creek Independent School District*, 690 F.2d 470 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *Wyatt By and Through Rawlins v. Poundstone*, 169 F.R.D. 155, 162 (M.D.Ala.1995) (Thompson, J.) ("it would be impossible to obtain and maintain 100% agreement within the class").

There is authority that suggests class treatment is improper where there is a significant amount of dissent among the class members over the subject matter of the suit. *See, e.g., East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (alternatively holding that because a majority of the class members had recently rejected a proposal calling for the relief sought by the named Plaintiffs, class certification was not proper); *Davis v. Roadway Express, Inc.*, 590 F.2d 140, 144 (5th Cir.1979) ("overwhelming opposition" to the subject matter of the suit); *Peterson v. Oklahoma City Housing Authority*, 545 F.2d 1270, 1273 (10th Cir.1976) (many of the class members opposed the action). These concerns are heightened in a class certified pursuant Rule 23(b)(2) because the reluctant class members are not afforded the opportunity to opt out. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir.1998).

At the present time, it does not appear that the desires of seventy-five class members should cause the court to reconsider the certification issue. The fact that some class members may be satisfied with the welfare benefits they are currently receiving, notwithstanding any alleged contractual violation, and would prefer to maintain the status quo and leave violations of their rights, if violations exist, unremedied is not dispositive under Rule 23(a). *See, e.g., Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir.1981) ("The fact that the class may have included persons who support the [challenged] program does not offend the principles set down in *Hansberry* ... It is not fatal if some members of the class might prefer not to have violations of their rights remedied"); *Waters v. Barry*, 711 F.Supp. 1125, 1131–32 (D.D.C.1989) ("diversity of opinion within a class does not [necessarily] defeat class certification"); *Jacobi v. Bache & Co., Inc.*, No. 70–3152, 1972 WL 560 at *4 (S.D.N.Y.1972) (antitrust suit) ("the fact that some members of the class may differ as to the desirability of a particular remedy for the anti-trust violation, or even desire the maintenance of the status quo, does not preclude their being included within the class bringing the action").

As the Fifth Circuit observed:

*Hansberry* ... cannot be read to forbid class actions in every case in which class members disagree. On the contrary:

... (i)n any conceivable case, some of the members of the class will wish to assert their rights while others will not wish to do so. Thus the familiar case of the

stockholders' derivative suit is almost invariably brought by minority stockholders to challenge action that a majority of the stockholders approve. Yet it is routinely regarded as an appropriate class suit. Another familiar class suit is that in which one or more taxpayers of a community, suing on behalf of all, challenge the validity of a proposed public expenditure. It is difficult to believe that there has ever been such a case in which a good many of the taxpayers would not have preferred that their rights not be enforced, because of their interest in having the expenditure made. Yet no one has ever doubted the propriety of bringing such a suit as a class action.

*Horton v. Goose Creek Independent School District,* 690 F.2d 470 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983) (citations and quotations omitted).

In the instant case which involves the identical legal right of thousands of class members, the opinion of seventy-five is not controlling.[1]

Michelin might be suggesting that the antagonistic class members share the same perspective as Michelin—keep the "current system." For example, Michelin cites the court to cases such as *Dierks v. Thompson,* 414 F.2d 453 (1st Cir.1969) in support of its contention that class certification is improper. In *Thompson,* the plaintiffs sued to determine certain rights under their pension plan. *Id.* at 454. The crux of the dispute in *Thompson* was whether the pension agreements vested the pensioners with a fixed obligation or whether the obligation fluctuated with the res of the trust. *Id.* at 456. The named plaintiffs thought that the latter interpretation would better their interests, while the defendant trustees considered the former interpretation to be more advantageous. *Id.* In considering the propriety of class certification, the court noted that

In the case at bar, while the suing plaintiffs may have been of the opinion that wise management or other factors would cause the fund to grow, others could well have thought that a vested obligation in a fixed amount would be more desirable than to incur investment risks. Under such circumstances the court could not have found that plaintiffs were "typical" of the former ... employees whom they purported to represent; they were typical of only one of two conflicting groups. Under the Rule, and as a matter of due process, plaintiffs could not represent both groups.

*Id.*

Michelin's analysis of *Thompson* omits the important fact that the court nonetheless found that class certification was proper because

the defendant trustees are not simply stakeholders, but from the outset have themselves actively supported the position of [the group opposed to the plaintiffs' construction]. Therefore, while it is not true that plaintiffs, as they would claim, represent all employees, it is true that any whom they do not represent are represented by the defendants.

*Id.* at 457.

Thus, to the extent that Michelin is arguing that the class members who would prefer to maintain the status quo share an identity of interest with Michelin, they are adequately represented by Michelin—which has vigorously asserted that view. *See Poundstone,* 169 F.R.D. at 162 ("decertification is not warranted at this time because it appears that the position of those class members who might oppose named plaintiffs on community placement issues is already being adequately—indeed, aggressively—advanced in this litigation by the defendants").

In response, the Plaintiffs insist on their novation argument, which the court has rejected in a recent Order denying Michelin's Motion for Reconsideration. If Plaintiffs' counsel maintains this argument, the entire issue of class certification would have to be reevaluated, as the court does not feel that that position would necessarily favor class treatment.

---

1. Michelin also appears to argue that some class members have actually had their benefits increased by the "current system," thereby demonstrating an inherent antagonism with the named Plaintiffs. These retirees, however, are not members of the class. *See Groover v. Michelin,* 187 F.R.D. 662, 667 (M.D.Ala.1999) ("The proposed class is limited by definition to retirees and surviving spouses whose benefits were reduced").

### B. *Commonality and Typicality*

Michelin also asserts that "the named plaintiffs are proceeding under the theory that the defendants' alleged representations to individual employees resulted in a contract for vested benefits." *See Def. Br.* at 16. Michelin relies on *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (en banc), which held that:

The premise of the bilateral contract theory was that GM had made an individual "side deal" with each early retiree. Each putative side deal involved any pertinent document the retiree might have signed— and the statements of acceptance, as we have seen, said nothing more about health insurance than that the early retiree accepted the "applicable" benefits—as well as any pertinent representations GM might have made to the retiree, whether orally, in writing, or both. A retiree might have signed a "long form" statement of acceptance, or a "short form," or a "statement of intent" to retire, or nothing at all. He might have heard GM officials speak about the special early retirement program at a group meeting, or might have seen a program summary compiled by GM, or might have had a one-on-one meeting with his supervisor or with a GM benefits person. He might have retired from a particular plant in a particular division and been given a particular set of representations, or he might have retired from a different plant in a different division and been given a completely different set of representations. Proof that GM had contracted to confer vested benefits on one early retiree would not necessarily prove that GM had made such a contract with a different early retiree.

*Id.* at 398. Accordingly, Michelin argues that class certification is improper.

Michelin's argument is wide of the mark because the Plaintiffs in this case, unlike those in *Sprague,* do not contend that they received vested benefits via oral or written representations made by Michelin. Instead, they argue that the P & I Agreement vested the retirees with lifetime benefits. Although there is some evidence extrinsic to the con-

tract that may support the Plaintiffs' view, this extrinsic evidence does not purport to establish any independent contractual obligations. Accordingly, Michelin's reliance on *Sprague* is misplaced.[2]

### III. CONCLUSION

For these reasons, Michelin's Motion to Decertify is due to be DENIED.

The clerk is DIRECTED to serve copies of this Memorandum Opinion by facsimile.

---

2. Michelin continues to assert that this class is improper under *Broussard,* 155 F.3d at 340 ("plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts"). That issue has been decided. *See Groover,* 187 F.R.D. at 667.