## In re TYCO INTERNATIONAL, LTD. Multidistrict Litigation (MDL 1335).

### MDL No. 02–1335–B.

United States District Court,
D. New Hampshire.

June 12, 2006.

---

Lawrence Walner, Lawrence Walner & Associates Ltd., Chicago, IL, Kenneth G. Bouchard, Bouchard & Kleinman PA, Hampton, NH, Leigh Smith, Melvyn I. Weiss, Sanford P. Dumain, Milberg Weiss Bershad & Schulman LLP, Ann M. Galvani, Boies Schiller & Flexner LLP, Marshall R. King, Mitchell Karlan, Gibson Dunn & Crutcher, Eric B. Fisher, Gregory A. Blue, Peter D. Morgenstern, Rachel K. Marcoccia, Morgenstern Jacobs & Blue LLC, Robert C. Finkel, Michael A. Schwartz, Renee L. Karalian, Wolf Popper LLP, New York City, Sidney S. Liebesman, Grant & Eisenhofer, Wilmington, DE, William L. Chapman, Jennifer A. Eber, Orr & Reno PA, Biron L. Bedard, Cook & Molan PA, R. Matthew Cairns, Ransmeier & Spellman, Mark L. Mallory, Mallory & Friedman PLLC, Concord, NH, David W. Shapiro, Boise Schiller & Flexner LLP, Oakland, CA, Edward A. Haffer, Sheehan Phinney Bass & Green, Manchester, NH, Darren T. Kaplan, Gregory E. Keller, John F. Harnes, Mary Kathryn King, Jill Asch Levenson, John F. Harnes, Chitwood Harley Harnes LLP, Atlanta, GA, for Plaintiffs.

Marc Frazier Scholl, New York County District Attorney's Office, New York City, for Intervenor Plaintiff.

Edward A. Haffer, Sheehan Phinney Bass & Green, David A. Vicinanzo, Nixon Peabody LLP, Richard B. McNamara, Wiggin & Nourie, P.A., Arnold Rosenblatt, Michael S. Owen, Cook Little Rosenblatt & Manson, Edward A. Haffer, Sheehan Phinney Bass & Green, Manchester, NH, Bryan A. Fratkin, Elizabeth F. Edwards, McGuirewoods, Richmond, VA, William T. Hassler, Steptoe & Johnson LLP, Barry Wm. Levine, Deborah

Goldstock Ringel, Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, Carolyn Barth Renzin, Lara Shalov, Michael J. Grudberg, Stillman & Friedman PC, Konstantinos D. Katsiris, Davis Polk & Wardwell, Miranda Schiller, Irwin H. Warren, Weil Gotshal & Manges, Francis P. Barron, Cravath Swaine & Moore LLP, Laurence Greenwald, Michele L. Pahmer, Stroock Stroock & Lavan LLP, Andrew Weaver, Jordana E. Lambert, Lawrence B. Friedman, Max Gitter, Cleary Gottlieb Steen & Hamilton, Jay B. Kasner, Skadden Arps Slate Meagher & Flom LLP, Christopher M. Wilson, Vicki K. Andreadis, Hughes Hubbard & Reed, Gregory A. Markel, Douglas I. Koff, Cadwalader Wickersham & Taft LLP, Alan Friedman, Steven S. Sparling, Kramer Levin Naftalis & Frankel LLP, Martin Glenn, O'Melveny & Myers LLP, New York City, Christian M. Hoffman, Foley Hoag LLP, Boston, MA, James E. Townsend, Townsend Law Office, Londonderry, NH, Irvin D. Gordon, Sulloway & Hollis, Concord, NH, Laurie Smilan, Latham & Watkins, Reston, VA, for Defendants.

Michael J. Beck, pro se.

### MEMORANDUM AND ORDER

BARBADORO, District Judge.

The lead plaintiffs in this securities fraud class action are former shareholders of Tyco International, Ltd. They assert securities fraud claims against Tyco, former Tyco executives and board members L. Dennis Kozlowski, Mark H. Swartz, Mark A. Belnick, Frank E. Walsh, Jr., Michael A. Ashcroft (the "individual defendants"), and Tyco's independent accountant and auditor, PricewaterhouseCoopers ("PwC"),(collectively the "defendants").

Plaintiffs allege that defendants misrepresented the value of several different companies Tyco acquired during the class period and misreported Tyco's own financial condition. They also claim that the individual defendants looted the company by misappropriating corporate funds in the form of undisclosed cash bonuses and forgiven loans. The looted proceeds were then used to reward the individual defendants for their participation in the accounting fraud scheme. Plaintiffs contend that this looting and accounting fraud scheme defrauded the investing public in violation of the federal securities laws. They claim that defendants made materially false and misleading statements and omitted material information in various registration statements and publications, which concealed the corporate misconduct and mismanagement, in violation of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2) and 77o, and Sections 10(b), 20(a) and 20(A) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a) and 78t–1, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. See Consolidated Compl. ¶ 2.

Plaintiffs have moved for the certification of a class "consisting of all persons and entities who purchased or otherwise acquired Tyco securities between December 13, 1999 and June 7, 2002 (the "Class Period"), and who were damaged thereby (the "Class"), excluding defendants, all of the officers, directors and partners thereof, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any of the foregoing have or had a controlling interest." Lead Pls.' Mot. for Class Certification (Doc. No. 348) at 1. The proposed class representatives are Plumbers and Pipefitters National Pension Fund ("P & P Pension Fund"), United Association General Officers Pension Plan ("UAGO"), United Association Office Employees Pension Plan and United Association of Local Union Officers & Employees Pension Fund ("UAOE"), Teachers Retirement System of Louisiana ("TRSL"), the Louisiana State Employees Retirement System ("LASERS"), and Voyageur Asset Management ("Voyageur").

Tyco argues that the class should not be certified because the lead plaintiffs are not adequate class representatives and the interests of the class members are too disparate to permit the case to be managed as a class action.[1] It also contends that one of the lead

---

1. PwC has joined Tyco in opposing plaintiffs' motion for class certification. See PwC Obj.

(Doc. No. 491).

plaintiffs lacks standing to sue and that two others should be barred from serving as lead plaintiffs because of improper conduct.

## CLASS CERTIFICATION STANDARD

■ To prevail on their motion for class certification, plaintiffs must satisfy all four requirements of Rule 23(a) and demonstrate that the class meets one of the criteria outlined in Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)(describing the characteristics of a class action); *Makuc v. Am. Honda Motor Co.*, 835 F.2d 389, 394 (1st Cir.1987) (explaining the burden of proof). Accordingly, they must first demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class, the claims or defenses of the

(3) representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These requirements are ordinarily known as numerosity, commonality, typicality, and adequacy.

Next, plaintiffs must demonstrate that the class meets one of the criteria outlined in Rule 23(b). *See Amchem*, 521 U.S. at 613–14, 117 S.Ct. 2231. Here, plaintiffs seek certification under Rule 23(b)(3). Under Rule 23(b)(3), they must show that "the questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

■ The class certification inquiry " 'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 297 (1st Cir.2000) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). While a motion for class certification is not a license to decide plaintiffs' claims on the merits, the "district court must formulate some prediction as to how specific issues will play out" to determine whether the motion should be granted. *Id.* at 298. Ultimately, whether or not certification is granted is within the broad discretion of the district court. *See Bowe v. Polymedica Corp.*, 432 F.3d 1, 4 (1st Cir.2005) (reviewing class certification decision "under the highly deferential 'abuse of discretion' standard"); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985) (upholding class certification unless the district court abused its discretion or "operated under an erroneous rule of law").

## ANALYSIS

■ Instead of addressing each of the prerequisites for certification as set forth above, Tyco has raised five arguments in opposition to class certification. These arguments implicate both Rule 23(a)'s adequacy requirement and Rule 23(b)(3)'s predominance and manageability requirements.[2] In

**2.** Tyco does not argue that plaintiffs have failed to satisfy Rule 23(a)'s numerosity requirement, nor does it explicitly assert that certification of the proposed class would be inconsistent with the rule's commonality and typicality requirements.

The numerosity requirement is satisfied when the number of potential class members and their geographic distribution are sufficiently great that joinder of all plaintiffs is not feasible. *Andrews*, 780 F.2d at 131–32. During the class period, millions of shares of Tyco were traded on the open market, rendering the group of potential purchasers who would be class members sufficiently numerous that joinder would be impracticable.

The commonality requirement "is not a high bar." *In re Chiang*, 385 F.3d 256, 265 (3d Cir. 2004). It " 'will be satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class.' " *Id.* (quoting *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 184 (3d Cir.2001)). " 'The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class.' " *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D.Mass.2005) (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 (4th ed.2002)). Plaintiffs easily satisfy this requirement because they allege that all members of the

keeping with Tyco's approach, I address each of its arguments in turn and analyze the requirements of Rule 23 in the context of each argument as they arise.

## A. *Equity Conflict*

■ Tyco first argues that the lead plaintiffs cannot satisfy Rule 23(a)'s adequacy requirement because their interest in recovering damages from Tyco on behalf of the class is in conflict with the interest that other class members have in preventing Tyco from paying damages. Tyco develops this "equity conflict"[3] argument by dividing the class into "equity holders" and "non-equity holders." Equity holders are class members who currently own a greater share of Tyco's stock than they owned during the class period. Non-equity holders, a group that includes all of the lead plaintiffs, are all other class members. Tyco argues that equity holders stand to lose more as shareholders than they will gain as class members if Tyco is required to pay damages to the class because any such payment will result in a corresponding reduction in the company's stock price that will more than offset any damages that equity holders recover as class members. The lead plaintiffs do not face this problem because they do not currently own any Tyco stock. Thus, their unqualified interest in recovering damages from Tyco is allegedly in conflict with the equity holders' interest in preventing Tyco from paying damages to the class. Tyco claims that more than 300 institutional class members are also equity holders.[4] Accordingly, it argues that the equity conflict is real and should prevent certification.

Tyco has produced expert testimony to support the claimed equity conflict. *See* Decl. of John W. Peavy, III. Plaintiffs, however, have countered with their own experts who have called into question the assumptions on which the equity conflict is based. Among other things, plaintiffs challenge Tyco's contention that any payment that it makes to the class will produce a corresponding drop in the company's stock price. According to plaintiffs, this assumption is incorrect because historical data demonstrates that a company's stock price more often than not rises after it announces a payment to a securities fraud class. Decl. of Steven Feinstein ¶ 12 (analyzing securities class action settlements greater than $25 million paid by solvent companies since 2002). Plaintiffs' data, however, does not necessarily undermine Tyco's equity conflict argument. It is conceivable that a company's stock price could rise after a settlement payment is announced because the payment is lower than the payment anticipated by the market. An equity conflict might still exist in such cases if the company's stock price would have risen even higher if the case had been dismissed

---

class were injured as a result of an overarching conspiracy.

Plaintiffs have likewise satisfied the typicality requirement, because the lead plaintiffs' claims arise from the same alleged accounting fraud scheme that injured the rest of the class. *See, e.g., In re Pharm. Indus.*, 230 F.R.D. at 78 (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir.1996)) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory as the other class members."); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D.Mass.2005) (representatives' claims do not have to be identical with absent class members' claims).

3. I follow other courts and commentators in referring to this alleged conflict as an "equity conflict." *See, e.g., In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 277 (S.D.Tex.2005); *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 462 (N.D.Ala.2003); David J. Ross, *Do Conflicts Between Members Vitiate Class Action Securities*

*Fraud Suits?*, 70 St. John's L.Rev. 209, 211 (1996).

4. Plaintiffs challenge the evidence that Tyco relies on to prove that the proposed class includes several hundred equity holders. For example, plaintiffs claim that Tyco improperly aggregated the holdings of individual mutual funds within fund families even though the individual funds are distinct entities. Decl. of Lucien Bebchuk ¶¶ 11–13. Plaintiffs also complain that Tyco has arbitrarily chosen March 31, 2005 as the date on which to determine whether a class member is an equity holder when only class members who are equity holders when a payment to the class is announced will be harmed by the payment if the conflict works in the way that Tyco suggests. Because any current equity holder has the power to become a non-equity holder at any time prior to the announcement of a payment to the class, plaintiffs argue that Tyco's methodology is fatally flawed. I do not need to evaluate these arguments because I dispose of Tyco's equity conflict argument for other reasons.

without a payment. The parties have not adequately explored this possibility. Thus, I cannot determine on the present record whether the economic assumptions on which the equity conflict is based are valid.

I need not determine whether Tyco's equity conflict argument can withstand plaintiffs' challenges, however, because the conflict is not a bar to certification for other reasons. First, it is important to bear in mind when considering the equity conflict that equity holders have a strong interest in recovering on their own claims against Tyco even if they have reason to oppose efforts by other class members to recover on their claims. This is because any adverse impact on Tyco's stock price that results from a payment to an individual class member must be borne by all of Tyco's current shareholders. Decl. of Lucien Bebchuk ¶¶ 20–22. Thus, if an equity holder owns 1% of Tyco's stock, the equity conflict will cost it only 1¢ as a shareholder for every dollar that it receives as a class member. This is significant because it means that the lead plaintiffs' unqualified interest in maximizing the recovery that they obtain from Tyco on behalf of the class is directly aligned with the interest that equity holders have in recovering on their own claims against Tyco.

More fundamentally, Tyco cannot rely on the equity conflict to prevent the certification of a class because its argument fails to properly account for the interests of non-equity holders. The proposed class includes thousands of class members who are unaffected by an equity conflict and who will have no practical way to pursue their claims against Tyco unless a class is certified. While equity holders may have an interest in preventing non-equity holders from recovering damages from Tyco, no subgroup of class members can prevent the remaining class members from proceeding as a class simply because that subgroup's members will be harmed if a payment is ultimately made to the other class members. At most, such conflicts entitle the subgroup to alternative relief, such as the substitution of class representatives, the redefinition of the class to exclude the subgroup, or notice of the conflict and an opportunity to opt out.

Tyco does not claim that the equity conflict can be remedied by either substituting class representatives or redefining the class. Changing class representatives will not cure the conflict because it is based on an alleged antagonism of interests between two substantial subgroups of class members rather than between the named class representatives and the rest of the class. Thus, if Tyco's objection is valid, no one can adequately represent a class that includes both equity holders and non-equity holders.

Redefining the class to exclude equity holders is problematic for two related reasons. First, because equity holders retain an interest in recovering on their own claims against Tyco even if the equity conflict is valid, it is unclear how equity holders would benefit if the class were redefined to exclude them. Second, while the categorical exclusion of equity holders would free the lead plaintiffs from the equity conflict, it would do so by denying equity holders their right under Rule 23 to decide individually whether to remain as class members or to opt out of the litigation. See Fed.R.Civ.P. 23(c)(2)(B). Because the benefits to equity holders of opting out of the class are by no means clear cut, I am unwilling to deny them their right to choose whether to remain in the class.

While neither the substitution of class representatives nor the categorical exclusion of equity holders is an adequate response to the equity conflict, equity holders can address the conflict in other ways. First, an equity holder can become a non-equity holder at any time by selling enough stock. Thus, equity holders who fear that Tyco's stock price will fall if a payment is announced to the class can avoid further losses by divesting themselves of their stock in Tyco. Second, equity holders who fear that the lead plaintiffs will focus only on Tyco without vigorously pursuing claims against other defendants can seek the certification of a subclass of equity holders. Finally, equity holders who do not want to be a part of the class can exercise their right under Rule 23(c)(2)(B) to opt out of the litigation. Because equity holders can protect themselves from the equity conflict in several different ways, any equity holders who remain in the class after being notified

of the equity conflict have little reason to complain of the adequacy of their class representatives. *See Larry James Oldsmobile–Pontiac–GMC Truck Co. v. Gen. Motors Corp.,* 164 F.R.D. 428, 437 (N.D.Miss.1996) (rejecting adequacy challenge where dissident class members have the right to opt out); *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 692 (D.Minn.1995) (same). Accordingly, the possible existence of an equity conflict does not prevent the lead plaintiffs from serving as adequate representatives of a class that includes only those equity holders who elect to remain in the class after receiving notice of the conflict.

█ Tyco alternatively argues that I must certify a subclass of equity holders immediately because they claim that the lead plaintiffs' interest in recovering damages from Tyco will cause them to neglect their claims against other defendants. This request is premature. The lead plaintiffs are pursuing a litigation strategy that is predicated on the theory that Tyco is liable for the wrongdoing of the individual defendants and that PwC aided the individual defendants in committing the fraud. They thus have a strong interest in demonstrating that all of the defendants are liable for damages. Further, Tyco itself has obvious interests in both avoiding liability and in seeing that any resulting liability is shared with its codefendants. Accordingly, equity holders will not go unprotected if I decline to certify a subclass immediately. *See Dierks v. Thompson,* 414 F.2d 453, 457 (1st Cir.1969) (allowing class to be certified where interest of dissident class members was represented by defendants); *see also Horton v. Goose Creek Indep. School Dist.,* 690 F.2d 470, 487 (5th Cir.1982) (same). If any member of the class steps forward during the course of the litigation and seeks to represent a subclass of equity holders, I will address the issue again at that time.

## B. *Loss Causation*

Tyco next argues that the proposed class is unmanageable and its designated representatives are inadequate because the evidence that class members must rely on to prove loss causation will differ depending on when they sold their Tyco stock.

█ Loss causation is an element of a securities fraud class action claim under § 21D of the Exchange Act. 15 U.S.C. § 78u–4(b)(4). In *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), the Supreme Court explained that loss causation cannot be proved merely by establishing that the defendants' misconduct artificially inflated the price of the target company's stock on the date of purchase. *Id.* Instead, as other courts have recognized, a plaintiff must also prove that the company's stock price later declined because the misconduct was disclosed to the market. *See, e.g., Takara Trust v. Molex, Inc.,* 429 F.Supp.2d 960, 966 (N.D.Ill.2006); *In Re Teco Energy Inc. Sec. Litig.,* No. 8:04–cv–1948–T–27EAJ, 2006 WL 845161, at *2, 2006 U.S. Dist. LEXIS 18101, at *12 (M.D.Fla. Mar. 30, 2006); *In re Initial Public Offering Sec. Litig.,* 399 F.Supp.2d 261, 265–66 (S.D.N.Y.2005). Courts sometimes refer to such disclosures as "corrective disclosures." *See, e.g., In re CornerStone Propane Ptnrs. L.P. Sec. Litig.,* No. C 03–2522 MHP, 2006 WL 1180267, at *9, 2006 U.S. Dist. LEXIS 25819, at *30 (N.D.Cal. May 3, 2006).

█ Tyco contends that plaintiffs have effectively divided the class into several distinct subgroups by pleading three different corrective disclosures in the consolidated complaint. One subgroup consists of class members who sold their Tyco stock before the first corrective disclosure. The remaining subgroups consist of class members who sold their stock after the first disclosure but before the second disclosure, class members who sold their stock after the second disclosure but before the third disclosure, and class members who continued to hold their stock after the third disclosure. Tyco argues that class members in the first subgroup must be excluded from the class immediately because they cannot prove under any circumstances that their losses were caused by a corrective disclosure. It also argues that the remaining subgroups cannot be included in a single class because each subgroup must rely on different corrective disclosures to prove

loss causation. As a result, the inclusion of these subgroups in a single class is improper because it "will inject disparate issues, render the proposed class unmanageable and raise substantial questions about adequacy of representation." Tyco Mem. in Opp. at 12. I reject both arguments.

■■■ Tyco's argument for the immediate exclusion of class members who sold their stock before the first corrective disclosure alleged in the complaint is based on the faulty premise that loss causation must be pleaded with particularity. Disputes about loss causation turn primarily on questions of fact. *Wortley v. Camplin*, 333 F.3d 284, 295 (1st Cir.2003). Moreover, unlike elements of a § 10(b) claim such as fraud and scienter, neither Federal Rule of Civil Procedure 9(b) nor the Private Securities Litigation Reform Act require that securities fraud plaintiffs plead loss causation with specificity. *Dura*, 544 U.S. at 347, 125 S.Ct. 1627. Instead, the complaint need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* The plaintiffs have satisfied this requirement by pleading that their claimed losses were caused by corrective disclosures. That they have specifically identified certain corrective disclosures in the complaint does not preclude them from later identifying additional disclosures. Thus, it is too early in the litigation to exclude former shareholders from the class simply because their losses were caused by corrective disclosures that have not yet been specifically identified. Tyco remains free to develop the issue further during discovery and to renew its argument in a properly supported motion for summary judgment at the appropriate time.

■■■ I also am unpersuaded by Tyco's assertion that the proposed class is unmanageable because some class members will have stronger loss causation arguments than others based upon when they sold their Tyco stock. As the First Circuit has recognized, classes are routinely certified where common issues predominate even though individual issues exist with respect to other matters such as affirmative defenses or damages. *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir.2003). There is

no reason why this principle should not also apply to the subject of loss causation. Here, the need to make different loss causation determinations for class members depending on when they sold their stock does not alter the "sufficient constellation of common issues [that] binds class members together" into a single class. *Waste Mgmt. Holdings*, 208 F.3d at 296.

Finally, Tyco has failed to properly develop its argument that the lead plaintiffs cannot adequately represent the class on the issue of loss causation. If the lead plaintiffs purchased their stock before the first possible corrective disclosure and held it until after the final possible corrective disclosure, they have good reason to argue for every disclosure that the evidence in the case will support because they can only recover damages for changes in Tyco's stock price that are tied to corrective disclosures. While the lead plaintiffs lack similar incentives to argue for corrective disclosures that may have occurred either before they purchased their stock or after they sold it, their interests would not be harmed if such disclosures are recognized unless the recognition of a disclosure that does not benefit them undermines their argument for the recognition of beneficial disclosures. Thus, the interests of the lead plaintiffs are not necessarily in conflict with the interests of other class members on the issue of loss causation simply because all members of the class will not benefit from all possible corrective disclosures. Since Tyco has failed to better develop its argument, I cannot credit its contention that the lead plaintiffs are inadequate class representatives on this issue.

C. *Exchange Act Claims and Securities Act Claims*

■■■ Tyco's third argument is that the conspiracy alleged in the consolidated complaint is so vast, and the legal theories on which the complaint is based are so disparate, that the case cannot be effectively managed as a class action. To support this argument, Tyco notes that the class period encompasses more than two years and that the defendants' alleged fraud scheme involved some 56 different registration state-

ments and prospectuses and an even larger number of other public statements. It also specifically argues that differences between plaintiffs' Exchange Act claims and their Securities Act claims make it impossible to litigate a class action that combines both types of claims.

I hold no illusions about the complexity of this case. More than 70 million pages of documents have been produced in discovery, at least 200 depositions are anticipated and I have already issued many orders addressing a wide variety of difficult legal questions. Complexity alone, however, cannot be the basis for refusing to certify a class where common issues predominate and alternatives to class certification do not exist for the vast majority of the allegedly injured parties. Plaintiffs base their case against the defendants on the premise that the individual defendants operated Tyco as a criminal enterprise over a substantial period of time. The statements that form the basis for their claims allegedly are part of a common scheme of acquisition accounting fraud and undisclosed looting that remained consistent through the life of the conspiracy. While some class members undoubtedly will have stronger claims than others based upon when they purchased their stock, the challenges that such individual differences present are inconsequential when weighed against the common interests that unite the entire class. Thus, I am unpersuaded that the case cannot be managed as a class action merely because it encompasses many different misstatements and omissions over a period of more than two years.

I also find no merit in Tyco's argument that I cannot certify a class that includes both Securities Act claims and Exchange Act claims. The sole example that Tyco cites to support this argument again concerns the subject of loss causation. Tyco argues that Exchange Act claimants have an interest in proving that Tyco's stock price fell in part because of the disclosure to the market of the New York District Attorney's investigation of Kozlowski's alleged violations of New York's sales tax laws. It then claims that the Securities Act claimants will be harmed by such evidence because it undermines their

argument that their damages are caused by the disclosure to the market of the different misrepresentations that serve as the basis for their Securities Act claims. This argument overlooks the fact that plaintiffs base both their Exchange Act claims and their Securities Act claims on the premise that Kozlowski led an overarching conspiracy that encompassed all of the misstatements and omissions on which both types of claims are based. As a result, evidence that Tyco's stock price declined after it became clear to the market that Kozlowski could no longer be trusted might actually support rather than undermine plaintiffs' Securities Act claims. Accordingly, I reject Tyco's contention that a class that includes both Securities Act claims and Exchange Act claims is unmanageable.

### D. *Voyageur*

Tyco next argues that Voyageur lacks standing to sue because it did not suffer any losses as a result of the alleged fraud. Voyageur responds by claiming that it has derivative standing to sue on behalf of its clients because it purchased Tyco stock for them pursuant to an agreement that granted it discretionary authority to "buy, sell, or otherwise effect transactions" for its clients. P & P Pension Fund Investment Manager Agr., May 1, 1996, ¶ 6.

The United States Supreme Court has repeatedly recognized that "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004); *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Three requirements must be met to warrant an exception to the general rule: "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411, 111 S.Ct. 1364 (cita-

tions omitted). Injury in fact is an "irreducible constitutional minimum" aspect of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Moreover, it requires an actual injury to the litigant that is before the court. *Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

 Voyageur does not even attempt to satisfy the Constitution's injury in fact requirement. Instead, relying on the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), it argues that it has standing because it was a "purchaser" of the securities at issue. *Blue Chip Stamps,* however, does not address injury in fact. Instead, it merely holds that only purchasers or sellers of securities can sue to recover for their losses under § 10(b). *Id.* at 749, 95 S.Ct. 1917. It does not grant standing to purchasers to recover for damages that were suffered by third parties. Because Voyageur does not allege that it was directly injured by the defendants' alleged misconduct, it lacks standing to sue on its clients' behalf.

### E. *UAGO and UAOE*

Tyco's last argument is that UAGO and UAOE are inadequate class representatives because they failed to produce certain investment management agreements pursuant to defendants' discovery request. I disagree. The record indicates that plaintiffs have substantially complied with the discovery requests. *See, e.g.,* Dep. of Ernest H. Soderstrom at 103:13–23 (noting that UAGO and UAOE had produced all but two or three of the investment management agreements); Tr. of Jun. 28, 2005 Tel. Conf. at 21:18–24 (additional discovery requests unnecessary for certification determination). Neither plaintiff is an inadequate class representative simply because it may have inadvertently failed to timely produce a few documents in an otherwise substantial discovery request. Thus, I decline to remove them as lead plaintiffs based on their alleged failure to fully comply with Tyco's discovery requests.

### CONCLUSION

For the reasons set forth above, plaintiffs' motion for class certification (Doc. No. 348) is granted. Voyageur, however, is removed as a lead plaintiff because it lacks standing to sue.

SO ORDERED.